[No. H007928. Sixth Dist. Oct. 25, 1991.]

In re AMBER D., a Minor.
RICHARD O'NEIL, etc., Petitioner and Respondent, v.
MICHELLE D., Objector and Appellant.

COUNSEL

Vicki J. Finucane, under appointment by the Court of Appeal, for Objector and Appellant.

Steven M. Woodside, County Counsel, Jeffrey L. Bryson, Deputy County Counsel, and Jerome Nadler, Deputy District Attorney, for Petitioner and Respondent.

OPINION

AGLIANO, P. J.—Michelle D. (mother) appeals from an order permanently freeing her nine-year-old daughter, Amber, from her custody and control pursuant to Civil Code section 232, subdivisions (a)(1) and (a)(7).[1] On appeal mother contends she was denied her due process right to confront witnesses when the trial court excluded her from her daughter's testimony pursuant to section 232, subdivision (b). Mother further contends the trial court erred in taking judicial notice of unspecified facts in the minor's juvenile court dependency file. We find no error and affirm the order.

### BACKGROUND

Amber was made a dependent of the juvenile court in July 1986 when she was five years old, pursuant to Welfare and Institutions Code section 300, subdivisions (a) and (d). At that time mother was a heroin addict who engaged in prostitution to support her habit. According to the dependency petition, mother was unable to make adequate child care arrangements, leaving the minor in the care of the maternal grandmother for six months of the past year. On one occasion mother left the minor with a roommate who inflicted a bruise under Amber's right eye.

Amber was placed in the home of Rosalyn Teel, the mother of Amber's half-brother, where she remained for over two years. In August 1988 Teel could no longer care for Amber and the minor was placed with Betty T., a longtime friend of Teel. At the time the section 232 petition was filed Betty T. was seeking to adopt Amber.

The petition to free Amber from her parents' custody and control was filed in March 1990 and granted in November 1990. The minor's father, who had been incarcerated during most of Amber's life, initially contested the petition, but withdrew his opposition after hearing the minor's testimony.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

The trial court specifically found, as to subdivision (a)(1) of section 232, that the minor "was left by her parents in the care and custody of the San Francisco County Department of Social Services for the period of December 1987 through the present without any provision for support and without communication from either parent with the intent of each parent to abandon the minor." As to section 232, subdivision (a)(7), the court found the minor "has been in out-of-home placement . . . for the period of June 16, 1986, to the present and during this period each parent has failed and is likely to fail in the future to provide a home, care and control and to maintain an adequate parental relationship with the minor," despite the provision of reasonable reunification services. Specifically referring to the evidence presented at the section 232 hearing, the trial court concluded the following: "The proof in this case was overwhelming that each parent abandoned the minor and that each parent had been given an opportunity to participate in the minor's life, but was unable or unwilling to do so. Father has no disagreement with the plan to terminate parental rights and to permit Amber to be adopted. . . . [¶] The minor is clearly thriving after a life fraught with deprivation and terror. That she has survived to become such a poised, articulate and lovely young person is remarkable. Her best interests are to remain in her current home with the legal protections and security that adoption offers." Mother appeals.

## DISCUSSION

### 1. *Exclusion of Mother From Minor's In-chambers Testimony*

At the section 232 hearing counsel for Amber, the district attorney, proposed to call the minor to testify in chambers outside the presence of her parents. The district attorney represented to the court that Amber had not seen either parent for more than four years, and that she had "extremely bad memories of both parents and is generally terrified of the idea of meeting them. . . ." He further explained that the minor was intimidated by the court process and had expressed a preference for the more informal setting of the judge's chambers over the open courtroom.

Mother opposed the request, arguing there was no evidence indicating either that Amber was unable to testify truthfully in the presence of her parents or that she would be intimidated or frightened by the presence of her mother. Father's attorney then submitted an offer of proof that Amber had not been intimidated by or terrified of him when she last saw him four years

earlier. Mother did not present evidence to rebut the representations of Amber's attorney.

The court granted the motion subject to the following conditions: "Amber will testify in chambers out of the presence of her parents with the four attorneys, and immediately after her testimony it will be read by the court reporter . . . to the father and to the mother, and after that legal process is over the court will consider other options. But the first time Amber testifies will be out of the presence of her parents." Shortly thereafter Amber testified that she remembered seeing her mother taking drugs and that she did not want to see her mother again, even if her mother were off drugs. Amber described an incident when she was four years old in which her mother had tried to sell her to a man because she was "unuseful." The minor also stated that her current caregiver, Betty T., unlike any previous person she had lived with,[2] made sure she was fed and bathed, and that she would like Betty T. to adopt her.

Section 232, subdivision (b), permits a court that is considering a petition to terminate parental rights to take the testimony of the minor in chambers and outside the presence of the parent or parents "if the minor's parent or parents are represented by counsel, the counsel is present, and any of the following circumstances exist: [¶] (1) The court determines that testimony in chambers is necessary to ensure truthful testimony. [¶] (2) The minor is likely to be intimidated by a formal courtroom setting. [¶] (3) The minor is afraid to testify in front of his or her parent or parents."

■ Mother contends Amber's attorney made an insufficient showing to justify examining Amber in chambers pursuant to this subdivision, thereby violating mother's due process right to confront witnesses in the proceeding. Mother argues the court, faced with "conflicting representations" regarding Amber's ability to testify in open court, should have taken testimony from Amber or from an expert in order to resolve this issue.

The plain language of section 232, subdivision (b), does not support mother's position. This provision grants trial courts discretion to determine the necessity of in-chambers testimony according to three broadly worded conditions. Subdivision (b) does not require the court to hear testimony to make this determination, nor is there case law construing the provision to include such a requirement. To insert such a requirement without foundation in either statute or precedent would not only violate long-established general principles of statutory construction, but also circumvent the specific

---

[2]Mother submitted photographs, which were admitted into evidence, to rebut Amber's suggestion that Amber had not been well cared for during her placement with the Teels.

legislative mandate to construe all provisions applicable to section 232 proceedings "liberally . . . to serve and protect the interests and welfare of the child." (§ 232.5) Accordingly, we decline to expand the clear import of the words of section 232, subdivision (b), to accomplish a purpose not manifest on the face of the statute or in relevant case law.

In the instant case we observe that the trial court took appropriate steps to protect mother's due process right of confrontation. The court explicitly stated the parents would be excluded the *first* time Amber testified, leaving open the option to include the parents if it later found she was able to testify in front of them without fear. Mother in fact did not request further examination of Amber in her presence. Furthermore, mother's counsel was present during the minor's direct examination. Afterwards the court recessed in order to permit Amber's testimony to be read to the parents and to enable the parents' attorneys to confer with their clients. Mother's counsel then extensively cross-examined the minor and again took the opportunity to confer with mother before announcing mother had no further questions. These measures properly accommodated mother's due process rights while maintaining the law's concern for the welfare of the minor. Accordingly, we see no error in the trial court's hearing of Amber's testimony outside mother's presence.

## 2. *Judicial Notice of the Dependency File*

Mother next contends the trial court violated her due process rights by taking judicial notice of "unspecified portions" of the dependency file, which included inadmissible hearsay and a "substantial quantity of negative material" about her which may have affected the court's decision to terminate her parental rights to Amber.

At the commencement of trial, county counsel, representing the department of social services, asked the court to "take . . . judicial notice of the prior orders and findings contained in the juvenile court dependency file for the minor" and to "review the file" for the purpose of evaluating reunification services as required by section 232, subdivision (a)(7). Mother's attorney stated she had no objection "to [judicial notice of] the findings, but not judicial notice of the entire file." The court responded, "I will only take judicial notice of that which I am entitled to do."

Mother contends we must find reversible error because it is "possible" that the trial court took judicial notice of "virtually all of the dependency file,

resulting in the wrongful admission of damaging hearsay in the numerous reports therein."

"In a section 232 proceeding, the judge may take judicial notice of facts asserted in findings and orders in a prior juvenile court proceeding but cannot take judicial notice of the entire juvenile court file. (*In re Tanya F.* (1980) 111 Cal.App.3d 436, 440 [168 Cal.Rptr. 713].)" (*In re David C.* (1984) 152 Cal.App.3d 1189, 1204-1205 [200 Cal.Rptr. 115].) More specifically, " 'a court *cannot* take judicial notice of *hearsay allegations* as being true, just because they are part of a court record or file. A court may take judicial notice of the *existence* of each document in a court file, but can only take judicial notice of the *truth* of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments.' " (*Id.* at p. 1205, italics in original.)

Independent of these general principles is the requirement in proceedings under section 232, subdivision (a)(7), that the court "review and consider the contents of the juvenile court file" in order to determine if reasonable services had been offered during the reunification period.

Although the trial court appeared to indicate it was taking judicial notice of the entire juvenile court file,[3] it subsequently qualified its ruling by stating it would take judicial notice only "of that which [it was] entitled to do." On appeal, we presume the trial court performed its duties in a regular and correct manner absent a clear showing to the contrary. (*In re Marriage of Fransen* (1983) 142 Cal.App.3d 419, 424 [190 Cal.Rptr. 885]; *Lopez* v. *City of Oxnard* (1989) 207 Cal.App.3d 1, 7 [254 Cal.Rptr. 556].) Accordingly, we must conclude the trial court in this case acted in accordance with its stated intent to follow the law by taking judicial notice only of orders and findings in Amber's dependency file and that any further review of the file was for the proper purpose of determining the adequacy of reunification services.

---

[3]After receiving no initial objections to county counsel's request, the court announced it would "take judicial notice of the dependency file. . . ." At this mother's attorney sought clarification of the ruling, asking the court if it were taking judicial notice of the findings and orders in the file and reviewing the remainder of the file. The court responded that it was "taking judicial notice of this legal file," including documents from dependency proceedings that took place in San Francisco before the case was transferred to Santa Clara County. The court stated it was "entitled to take judicial notice of them, too."

## Disposition

The order is affirmed.

Cottle, J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 1992.