Opinion
 

 HALLER,J.
 
 *
 

 This insurance declaratory relief action arises from an incident in which Anthony Yamamoto was shot by a minor, Bruce B. (Bruce), who used his father’s gun. Relying on factual findings of intentional conduct made in juvenile court and applying collateral estoppel, the trial court granted summary judgment in favor of Western Mutual Insurance
 
 *1478
 
 Company (Western), the homeowners insurance carrier for Bruce’s family. Yamamoto, who was named as a defendant in the declaratory relief action, appeals. His principal contentions are the elements necessary to apply collateral estoppel did not exist, and, even if they did, findings in juvenile court should not be utilized in subsequent civil proceedings.
 

 We find the trial court properly concluded the findings in juvenile court were binding on the parties to this action and, having made that determination, the trial court also correctly decided there was no coverage because the policy excluded coverage for “expected or intended” bodily injury.
 

 Factual and Procedural Background
 

 On November 2, 1990, at approximately 9:30 p.m., Yamamoto was skateboarding with a friend at a shopping center when a car drove into the parking lot. The car repeatedly sped up and slowed down, and the occupants, including Bruce, gave Yamamoto and his friend dirty looks. When Yamamoto approached the car and asked, “[w]hat’s wrong with your driving?,” Bruce, a passenger, pointed a gun at him. Yamamoto then asked, “[a]re you going to shoot me?” The car drove away.
 

 Later that evening, Yamamoto and two friends went to Bruce’s residence, where Yamamoto left a boulder in the driveway and threw eggs at the house. As Yamamoto drove off, Bruce followed in his mother’s car, carrying his father’s gun. Eventually Bruce and Yamamoto met in a cul-de-sac. Yamamoto approached the car with his hands up. When Yamamoto was within six or seven feet of the car, Bruce shot him several times, hitting him in both arms.
 

 On November 6, 1990, a petition was filed in juvenile court alleging that Bruce assaulted Yamamoto with a firearm (Pen. Code, § 245, subd. (a)(2)) and committed an act of misdemeanor hit-and-run driving (Veh. Code, § 20002, subd. (a)). The petition also specially alleged that Bruce used a firearm within the meaning of Penal Code section 12022.5 and intentionally inflicted great bodily injury within the meaning of Penal Code section 12022.7 in the commission of the assault. Following a four-day hearing, at which Bruce’s counsel called witnesses favorable to Bruce and Bruce testified that he acted in self-defense, the petition was sustained in its entirety. Bruce was committed to a 24-hour school for the maximum term of 11 years and 6 months.
 

 Bruce appealed, raising several issues, including the validity of the great bodily injury finding (Pen. Code, § 12022.7), the rejection of his self-defense claim and the improper use of enhancements to set the maximum
 
 *1479
 
 term. This court affirmed but modified the term imposed.
 
 (In re Bruce B.
 
 (Oct. 21, 1991) D013919 [nonpub. opn.].)
 
 [1]
 

 Specifically, we found “[r]epeatedly shooting a .38 caliber handgun at a victim at close range is substantial evidence supporting the [section] 12022.7 finding. . . . [Par.] Substantial evidence supports the rejection of the self-defense claim.”
 
 (In re Bruce B., supra.)
 
 Because the trial court had improperly used two enhancements (Pen. Code, §§ 12022.5, 12022.7) in setting the maximum term, we struck the lesser Penal Code section 12022.7 enhancement, thereby reducing the term.
 
 (In re Bruce B., supra.)
 

 On August 9, 1991, Yamamoto filed a personal injury action, naming Bruce and his parents as defendants. (Super. Ct. San Diego County, 1991, No. 641147).) Alleging both intentional and negligent causes of action, Yamamoto sought recovery for damages sustained as a result of the shooting incident.
 

 Bruce’s family tendered the matter to their homeowners carrier, Western. Western accepted the defense subject to a reservation of rights, filed the instant declaratory relief action against its insureds (Bruce and his parents) and Yamamoto, and subsequently sought summary judgment.
 

 In its motion, Western argued the juvenile court’s true finding was binding on Bruce’s family as well as Yamamoto, and, because the issue of intentional conduct had been adjudicated as part of the true finding, there was no coverage. Western relied upon policy exclusions precluding coverage for injuries that were “expected or intended” and for injuries arising out of criminal acts, Insurance Code section 533, which prohibits coverage for willful conduct, and case law authority interpreting the phrase, “an insured.”
 

 In opposition, Yamamoto set forth several arguments: Western had not met its burden of proof; it was improper to take judicial notice of the juvenile court findings; juvenile court proceedings have no collateral estoppel effect on civil proceedings; the “criminal acts” exclusion was ambiguous; there was a triable issue of material fact as to whether Bruce acted intentionally or in self-defense; and Bruce’s parents were entitled to coverage even if Bruce was not. Bruce’s family also opposed the motion, raising similar contentions.
 

 
 *1480
 
 At the first of two oral hearings, the trial court indicated it was inclined to grant summary judgment based on collateral estoppel, observing “juvenile proceedings ... are the functional equivalent of a judicial determination with regard to issues of fact that are binding on this Court and not subject to relitigation.” However, the trial court wanted to know more about the scope of the juvenile court proceedings before determining whether the doctrine was applicable.
 

 At the second hearing, on August 28, 1992, the trial court informed counsel it had secured the juvenile court file, and, after reviewing it, was satisfied “that all of the issues with regard to whether or not the acts of the defendant [Bruce], in the juvenile matter, were intentional have been raised.” Concluding the requisite elements of collateral estoppel were present, the trial court granted summary judgment in favor of Western and against Yamamoto and Bruce’s family. The minute order reflects the trial court relied upon the insurance policy exclusion for bodily injury “expected or intended” by an insured, and Insurance Code section 533 in concluding there was no coverage. The minute order also reflects the trial court took judicial notice of the entire juvenile court file.
 

 In the formal order granting summary judgment, which was entered on September 17,1992, the trial court concluded Bruce’s acts were criminal and intentional and found: (1) the insurance policy’s exclusion for bodily injury “expected or intended” by an insured applied to defeat coverage; (2) the exclusion for bodily injury resulting from any criminal act applied to defeat coverage; (3) Insurance Code section 533 prohibits coverage for Bruce; and (4) Bruce’s parents are not covered because the policy excludes coverage for all insureds for any injury intentionally caused by an insured.
 

 Yamamoto appealed; Bruce’s family did not.
 

 Discussion
 

 Initially, we reject Western’s argument Yamamoto has no standing to pursue this appeal. Western named Yamamoto as a defendant in the declaratory relief action below, and therefore Yamamoto, as an aggrieved party, may appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 135, p. 145.) Clearly, Western’s purpose in naming Yamamoto was to adjudicate Yamamoto’s rights and bind him to the ultimate judgment. With that objective in mind, Western’s suggestion Yamamoto cannot appeal an adverse judgment, is inherently unfair and contrary to basic equitable considerations.
 

 Turning to the merits of the appeal, summary judgment is properly granted when the evidence in support of the moving party establishes there is no
 
 *1481
 
 material issue of fact to be tried and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c);
 
 Mann
 
 v.
 
 Cracchiolo
 
 (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) “The trial court must decide if a triable issue of fact exists. If none does, and the sole remaining issue is one of law, it is the duty of the trial court to determine the issue of law.”
 
 (B & E Convalescent Center
 
 v.
 
 State Compensation Ins. Fund
 
 (1992) 8 Cal.App.4th 78, 88-89 [9 Cal.Rptr.2d 894].)
 

 On appeal, this court must conduct de novo review to determine whether there are any triable factual issues.
 
 (Pearl
 
 v.
 
 General Motors Acceptance Corp.
 
 (1993) 13 Cal.App.4th 1023, 1027 [16 Cal.Rptr.2d 805].) Likewise, because the “interpretation of an insurance policy is a question of law, [we must] make an independent determination of the meaning of the language used in the contract under consideration.”
 
 (State Farm Fire & Casualty Co.
 
 v.
 
 Eddy
 
 (1990) 218 Cal.App.3d 958, 965 [267 Cal.Rptr. 379].)
 

 Moreover, where there is no genuine issue of material fact, the appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court.
 
 (Lucas
 
 v.
 
 Pollock
 
 (1992) 7 Cal.App.4th 668, 673 [8 Cal.Rptr.2d 918];
 
 Koch
 
 v.
 
 Rodlin Enterprises
 
 (1990) 223 Cal.App.3d 1591, 1593 [273 Cal.Rptr. 438].) Thus, we must affirm so long as any of the grounds urged by Western, either here or in the trial court, entitles it to summary judgment.
 
 (Maryland Casualty Co.
 
 v.
 
 Reeder
 
 (1990) 221 Cal.App.3d 961, 966-967 [270 Cal.Rptr. 719].)
 

 Western’s policy (policy No. 1021703) contained the following relevant exclusions:
 

 “Coverage E—Personal Liability
 
 and
 
 Coverage F—Medical Payments to Others
 
 do not apply to
 
 bodily injury
 
 or
 
 property damage:
 

 “a. which is either expected or intended by an
 
 Insured',
 
 or
 

 “h. resulting from any criminal act committed by or at the direction of an
 
 insured.”
 

 Yamamoto urges reversal of the summary judgment on the ground that a triable issue of material fact exists as to whether Bruce’s actions in the shooting were either criminal, willful or intentional, thereby obviating the trial court’s need to even reach the question of whether these exclusions applied. The validity of this argument depends on the answer to the fundamental issue in this appeal: do principles of collateral estoppel preclude
 
 *1482
 
 relitigation, in the declaratory relief action, of Bruce’s intent in shooting Yamamoto, an issue that was adjudicated in the prior juvenile court proceeding? If they do, there is no triable issue of material fact and we proceed to examine the policy exclusions. If they do not, a triable issue exists, rendering the grant of summary judgment improper.
 

 In
 
 Clemmer
 
 v.
 
 Hartford Insurance Co.
 
 (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098], our Supreme Court delineated the circumstances under which collateral estoppel applies, articulating the three criteria that must exist before a party will be prevented from relitigating an issue: “(1) the issue decided in a prior adjudication is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication.”
 
 (Clemmer
 
 v.
 
 Hartford Insurance Co., supra,
 
 22 Cal.3d at p. 874, italics omitted.)
 

 Yamamoto contends these criteria were not present. We disagree. Concerning the first element, both the juvenile court and the declaratory relief action addressed an identical issue—Bruce’s intent when he shot Yamamoto. The juvenile court decided the issue, when it made a true finding under the Penal Code section 12022.7 allegation. Penal Code section 12022.7 reads in pertinent part: “(a) Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person . . . shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he or she is convicted.” Because that enhancement requires evidence of specific intent to cause great bodily injury, (see
 
 People
 
 v.
 
 Phillips
 
 (1989) 208 Cal.App.3d 1120, 1123 [256 Cal.Rptr. 654]), the juvenile court could not have rendered its true finding as to that enhancement without concluding beyond a reasonable doubt that when Bruce shot Yamamoto he did so with the specific intent to cause great bodily injury. Notably, the criminal standard of proof is significantly more stringent than the preponderance of evidence standard applicable in the declaratory relief action at issue here.
 

 Bruce’s intent was clearly at issue and decided in “a prior adjudication.” Moreover, the issue determined there is identical to the declaratory relief issue of whether Yamamoto’s bodily injury was intentional and thus precluded by the “expected or intended” policy exclusion. The first
 
 Clemmer
 
 criterion was met.
 

 The second criterion also was satisfied. For collateral estoppel to purposes, “ ' “final judgment” includes any prior adjudication of an issue in
 
 *1483
 
 another action that is determined to be
 
 sufficiently firm to be accorded conclusive
 
 effect.’ ”
 
 (Sandoval
 
 v.
 
 Superior Court
 
 (1983) 140 Cal.App.3d 932, 936 [190 Cal.Rptr. 29], quoting Rest.2d Judgments, § 13, italics added by
 
 Sandoval
 
 court.) Principles of collateral estoppel may apply to judgments in both civil and criminal cases. (See
 
 Teitelbaum Furs, Inc.
 
 v.
 
 Dominion Ins. Co., Ltd.
 
 (1962) 58 Cal.2d 601, 605-606 [25 Cal.Rptr. 559, 375 P.2d 439];
 
 Miller
 
 v.
 
 Superior Court
 
 (1985) 168 Cal.App.3d 376, 381 [214 Cal.Rptr. 125] [“The principles of collateral estoppel mandate that any issue necessarily decided by a court of competent jurisdiction in a criminal proceeding is conclusively determined as to the parties or their privies if it is involved in a subsequent civil action.”].)
 

 Here, this court has affirmed as modified, the juvenile court’s order in
 
 In re Bruce B., supra.
 
 The time for petition for review in the Supreme Court has long since passed. Accordingly, we find our affirmance of the juvenile court’s order in
 
 In re Bruce B., supra,
 
 established a final adjudication on the merits that satisfied the second
 
 Clemmer
 
 prong. In reaching this conclusion, it is particularly significant that in the juvenile appeal we considered and rejected Bruce’s claims: (1) there was insufficient evidence to sustain the Penal Code section 12022.7 true finding, and (2) the juvenile court judge should have found Bruce acted in self-defense.
 
 (In re Bruce B., supra.)
 

 [2]
 

 The third
 
 Clemmer
 
 criterion also was met. Unlike the first two criteria, both of which focus on the nature of the issue adjudicated, the third criterion—privity—relates to the identity of interest between the parties. Here, privity is clear. Bruce was a party in the prior juvenile court proceeding and in the declaratory relief action.
 

 Likewise, we are satisfied that the party against whom collateral estoppel is being asserted “should reasonably have expected to be bound by the prior adjudication.”
 
 (Clemmer
 
 v.
 
 Hartford Insurance Co., supra,
 
 22 Cal.3d at p. 875.) Given the objective nature of this standard, we conclude a reasonable person in Bruce’s position would have expected to be bound by the true finding determinations made against him in the juvenile proceeding.
 

 
 *1484
 
 We need not determine whether these elements exist as to Yamamoto. It is enough that they apply to Bruce. As Yamamoto acknowledged at oral argument, if collateral estoppel applies to Bruce and as a result there is no coverage afforded Bruce, this is dispositive. Yamamoto, who is not a party to the insurance contract, cannot require Western to pay benefits under the policy if Western’s own insured is not entitled to coverage.
 

 In addition to contending the various
 
 Clemmer
 
 requirements were not satisfied, Yamamoto advances a public policy argument against the application of collateral estoppel. He urges that because juvenile court proceedings are nonadversarial in nature, adjudications reached there should not preclude relitigation in subsequent civil proceedings.
 

 Yamamoto correctly notes jury trials are not permitted in juvenile court, and the focus of juvenile court is different than adult criminal proceedings. However, it does not follow that findings and adjudications made in juvenile court are entitled to less deference or suffer a constitutional infirmity.
 

 As our Supreme Court has noted, despite “ ‘the “ ‘civil’ label-of-convenience”
 
 (In re Gault
 
 [1967] 387 U.S. 1, 50 . . .the quasi-criminal nature of juvenile proceedings, involving as they often do the possibility of a substantial loss of personal freedom,’ ” should not be obscured.
 
 (City of San Jose
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 47, 53 [19 Cal.Rptr.2d 73, 850 P.2d 621].) In fact, contested juvenile court proceedings under Welfare and Institutions Code section 602 are conducted much like adult criminal proceedings save for the lack of a jury trial. (See Welf. & Inst. Code, § 680.) Such juvenile court proceedings follow comparable rules of evidence and procedure, including the right to counsel, and share the same burden of proof as adult criminal proceedings. (See Welf. & Inst. Code, §§ 633, 634; Cal. Rules of Court, rule 1488.)
 

 As to the lack of a jury trial, the courts of this state consistently have found that there is no constitutional right to a jury trial in juvenile court proceedings. (See
 
 Joey W.
 
 v.
 
 Superior Court
 
 (1992) 7 Cal.App.4th 1167, 1174 [9 Cal.Rptr.2d 486];
 
 In re Jose M.
 
 (1994) 21 Cal.App.4th 1470, 1480 [27 Cal.Rptr.2d 55].) Yamamoto offers no authority, and we know of none, for the proposition that the decisions reached in juvenile proceedings are somehow less credible than decisions made in other judicial proceedings.
 

 Accordingly, we hold where a contested matter has been adjudicated in a juvenile court proceeding under Welfare and Institutions Code section 602 following the same formalities, rights and processes as an adult criminal trial, the findings of the juvenile court are entitled to the same collateral
 
 *1485
 
 estoppel effect that would be afforded findings made in an adult criminal trial.
 

 Intertwined with the collateral estoppel issue, Yamamoto asserts the trial court improperly took judicial notice of the entire juvenile court file and erroneously took judicial notice of the truth of the factual findings made in juvenile court. Neither contention is persuasive.
 

 First, judicial notice may be taken of “[r]ecords of . . . any court of this state.” (Evid. Code, § 452, subd. (d).) Here, the trial court cannot be faulted for taking judicial notice of this court’s unpublished opinion in
 
 In re Bruce B., supra.
 
 In the unpublished'opinion, we set forth the issues which had been adjudicated in juvenile court and specifically upheld the juvenile court’s conclusions regarding Bruce’s intent (the Pen. Code, § 12022.7 true finding) and the lack of self-defense. Recognizing their relevance in the declaratory relief action, the trial court took judicial notice of these findings and considered them in ruling on the summary judgment motion. This was proper.
 
 [3]
 

 Second, although Yamamoto correctly points out a court may not take judicial notice of the truth of factual assertions made in the documents of a previous case (see
 
 Sosinsky
 
 v.
 
 Grant
 
 (1992) 6 Cal.App.4th 1548, 1563-1569 [8 Cal.Rptr.2d 552]), that is not what occurred here. The trial court merely determined that a particular issue—Bruce’s intent—had been previously adjudicated after a contested adversarial hearing, and, then, in accordance with collateral estoppel doctrines, did not permit the same issue to be litigated again. As noted in
 
 Sosinsky
 
 v.
 
 Grant, supra,
 
 6 Cal.App.4th at page 1569: “Whether a factual finding is true is a different question than whether the truth of that factual finding may or may not be subsequently litigated a second time. The doctrines of res judicata and collateral estoppel will, when they apply, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party who did not testify truthfully. [Citations.]”
 

 Having concluded the trial court properly took judicial notice of our unpublished opinion in
 
 In re Bruce B., supra,
 
 and correctly prohibited the parties from relitigating in the declaratory relief action the issue of Bruce’s intent when he shot Yamamoto, it follows there was no triable issue of material fact concerning Bruce’s intent. Thus, the inquiry turns to contract interpretation.
 

 
 *1486
 
 As previously discussed, the operative policy language here is contained in the following exclusion (Exclusion a.):
 

 “Coverage E—Personal Liability
 
 and
 
 Coverage F—Medical Payments to Others
 
 do not apply to
 
 bodily injury
 
 or
 
 property damage:
 

 “a. which is either expected or intended by an
 
 insured
 

 Interpretation of an insurance policy is a question of law.
 
 (State Farm Fire & Casualty Co.
 
 v.
 
 Eddy, supra,
 
 218 Cal.App.3d at p. 965.)
 

 Concerning Bruce, the issue is straightforward. Exclusion a. eliminates coverage for bodily injury resulting from the acts of an insured which were “expected or intended.” Because (1) Bruce was found to have acted with the intent to commit great bodily injury, (2) Bruce was an insured, and (3) the exclusion, as to Bruce, is neither vague nor ambiguous, there is no coverage.
 

 Yamamoto concedes that if there was no triable issue of material fact regarding Bruce’s intent, Exclusion a. eliminates coverage for him. But Yamamoto vigorously contends this exclusion does not eliminate coverage for Bruce’s parents. Noting that his personal injury lawsuit against the parents is premised on negligent supervision, not intentional conduct, Yamamoto argues the exclusion is not applicable. We disagree.
 

 Concerning the parents, a similarly worded exclusion was addressed in
 
 Fire Ins. Exchange
 
 v.
 
 Altieri
 
 (1991) 235 Cal.App.3d 1352 [1 Cal.Rptr.2d 360]. The conclusion reached there is dispositive. The parents are not entitled to coverage.
 

 In
 
 Fire Ins. Exchange
 
 v.
 
 Altieri, supra,
 
 235 Cal.App.3d at pages 1360-1361, the Court of Appeal held a homeowners insurance policy precluded coverage for negligent supervision by the parents of a minor who intentionally struck and injured another minor, where the policy excluded coverage for bodily injury “ ‘caused intentionally by or at the direction of
 
 an
 
 insured or . . . resulting from any occurrence caused by an intentional act of
 
 an
 
 insured person.’ ” (Italics supplied by
 
 Altieri
 
 court.)
 

 The Court of Appeal in
 
 Fire Ins. Exchange
 
 v.
 
 Altieri, supra,
 
 surveyed cases throughout the country and noted that where the language of the exclusion involved intentional acts of “the insured,” coverage was extended to other co-insureds.
 
 (Fire Ins. Exchange
 
 v.
 
 Altieri, supra,
 
 235 Cal.App.3d at pp. 1360-1361.) But, where the phrase “an insured” was used, there was no
 
 *1487
 
 coverage. The Court of Appeal observed: “On the other hand, where, as here, the policy excludes coverage for bodily injury intended or expected by ‘an’ or ‘any’ insured, the cases have uniformly denied coverage for all claims, including negligent supervision claims. In
 
 Allstate Ins. Co.
 
 v.
 
 Gilbert
 
 (9th Cir. 1988) 852 F.2d 449, the court found no coverage for a wife for failing to take steps to prevent her husband from molesting a neighbor child. Likewise in
 
 Travelers Ins. Co.
 
 v.
 
 Blanchard
 
 (La.Ct.App. 1983) 431 So.2d 913, there was no coverage of the father’s vicarious liability for his son’s theft of jewelry. Also in
 
 Allstate Ins. Co.
 
 v.
 
 Freeman
 
 (1989) 432 Mich. 656 [443 N.W.2d 734], the Michigan Supreme Court held that a husband who negligently made a gun available to his wife was not covered where the intentional act exclusion referred to ‘an insured.’ For the same reasons, the exclusion in this case of coverage for bodily injury intended or expected by ‘an’ insured precludes coverage for Altieri’s parents’ negligent supervision of him.”
 
 (Fire Ins. Exchange
 
 v.
 
 Altieri, supra,
 
 235 Cal.App.3d at p. 1361.)
 

 Because we find the trial court properly concluded there was no triable issue of fact and correctly interpreted Exclusion a., summary judgment was warranted. Thus, there is no need to examine the appellant’s arguments concerning Insurance Code section 533 and the “criminal acts” exclusion. Even if Yamamoto’s analysis were correct on either issue, it would not change the outcome of this case.
 

 Disposition
 

 Affirmed.
 

 Work, Acting P. J., and Froehlich, J., concurred.
 

 *
 

 Judge of the San Diego Superior Court sitting under assignment by the Chairperson of the Judicial Council.
 

 [1]
 

 In this appeal, we took judicial notice of the opinion in
 
 In re Bruce B., supra,
 
 D013919 pursuant to an order issued April 7, 1993. At that time, we also granted a motion to augment the record on appeal to include, among other things, the juvenile court petition in that matter, as well as the dispositive minute order from that proceeding and a protective order regarding the case issued by the juvenile court. We also ordered the juvenile court to transfer the complete file in the case to this court under seal.
 

 [2]
 

 In
 
 In re Bruce B., supra,
 
 we affirmed the juvenile court order as modified because the juvenile court incorrectly used two sentencing enhancements where it was proper to use only one. The proper procedure for the juvenile court in such situations is to impose the greater enhancement; accordingly, we struck the Penal Code section 12022.7 enhancement solely for purposes of sentencing. We did so after we had decided that there was substantial evidence to support a true finding of the Penal Code section 12022.7 enhancement. Such a modification is not a partial reversal (see 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Appeal, § 3264, p. 4027), and does not abrogate the adjudication on the merits of the true finding on the Penal Code section 12022.7 enhancement for- purposes of collateral estoppel.
 

 [3]
 

 Because, standing alone, these two findings gleaned from the unpublished opinion were sufficient to establish that Bruce’s intent was adjudicated in juvenile court on the merits, we need not determine whether the trial court erred in taking judicial notice of the “entire” juvenile court file. (See
 
 In re Amber D.
 
 (1991) 235 Cal.App.3d 718, 724 [286 Cal.Rptr. 751].)