[No. G017997. Fourth Dist., Div. Three. Dec. 22, 1998.]

LARRY LE BOURGEOIS, Plaintiff and Appellant, v.
FIREPLACE MANUFACTURERS, INC., et al., Defendants and
Respondents.

## COUNSEL

Gary S. Bennett for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole and Scott C. Pape for Defendants and Respondents.

## OPINION

**SONENSHINE, J.**—Larry Le Bourgeois appeals from a summary judgment in favor of his former employer, Fireplace Manufacturers, Inc. (FMI) and supervisor, Debra Ketsdever, in Le Bourgeois's suit alleging wrongful termination based on disability discrimination. We publish our opinion affirming the judgment because, to date, no California state court has decided, as we do today, that supervisory personnel cannot be held individually liable for discrimination under the Americans with Disabilities Act (ADA), 42 United States Code section 12101 et seq.[1] Our conclusion is compelled under the rationale enunciated by our Supreme Court in *Reno* v. *Baird* (1998) 18 Cal.4th 640 [76 Cal.Rptr.2d 499, 957 P.2d 1333]. And, following

---

[1]All further statutory references are to 42 United States Code, unless otherwise stated.

*Reno*'s direct holding, we also decide such persons cannot be sued as individuals for wrongful discharge in violation of fundamental public policy[2] where the basis for the cause of action is alleged discrimination under California's Fair Employment and Housing Act (FEHA), Government Code section 12900 et seq. (*Reno* v. *Baird, supra,* 18 Cal.4th at pp. 663-664.)

## FACTUAL[3] AND PROCEDURAL BACKGROUND

In June 1989, FMI hired Le Bourgeois as a credit manager. In March 1992, while on the job, he slipped and fell, injuring his elbow and shoulder. He took an extended medical leave, eventually undergoing surgery in July.

In November, responding to supervisor Ketsdever's inquiries about his progress and anticipated date of return, Le Bourgeois said he was in a lot of pain and not doing well; he did not know when he would be able to resume working. FMI, deciding it had to fill the credit manager position to maintain continuity, hired someone else.

Le Bourgeois did not contact FMI during the next six months. In May 1993, he called Ketsdever and told her he had a doctor's release and was ready to come back to work June 1. He said he was restricted from lifting or carrying more than 25 pounds, performing overhead work and typing on the computer for longer than 20 minutes per hour. In addition, he was required to undergo physical therapy two to three times weekly. He wanted to resume his work as credit manager. Ketsdever told Le Bourgeois to report to the human resources administrator, Linda Kopps.

Had the credit manager position or any other comparable work been available, it would have been given to Le Bourgeois. However, because there were no openings, Kopps advised Le Bourgeois the company would attempt to find work for him. In the meantime, she suggested, he should file for unemployment benefits and begin vocational rehabilitation and retraining, at FMI's expense. Either he would be placed in an existing position when one became available or FMI would create a new job for him. He was advised of his right to continue medical benefits at his own expense.

A short time later, FMI designed a new marketing coordinator position specifically for Le Bourgeois. Throughout July, the employer repeatedly attempted to contact him, leaving messages on his telephone answering

---

[2]See, e.g., *Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074].

[3]The factual summary is taken from the undisputed material facts found by the trial court to entitle FMI and Ketsdever to summary judgment.

machine and with his father and stepson. But Le Bourgeois, having in the interim filed employment discrimination complaints with EEOC (Equal Employment Opportunities Commission) and DFEH (California Department of Fair Employment and Housing), never returned the calls. His attorney advised Ketsdever his client had no interest in returning to FMI. Kopps wrote to Le Bourgeois to obtain confirmation of that information. He did not respond.

After investigating and deciding no action would be taken, the agencies advised Le Bourgeois he could proceed with a civil suit. In September, he filed this action for damages against FMI, Ketsdever and Kopps, who was eventually dismissed as a defendant. The complaint sought recovery based on eight causes of action—breach of the implied-in-fact contract, breach of the covenant of good faith and fair dealing, unlawful discrimination in violation of the ADA, wrongful termination in violation of public policy set forth in the FEHA, intentional and negligent infliction of emotional distress, fraud and negligent misrepresentation.

Le Bourgeois dismissed the latter three causes of action during the course of litigation. FMI's and Ketsdever's successful motion for summary judgment disposed of the others. In this appeal, Le Bourgeois challenges the summary judgment only as it pertains to his claim of disability discrimination.[4] Although we may deem all other issues waived and pass them without consideration (see *Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175

---

[4]In his opening brief, Le Bourgeois's statement of issues alludes only to the ADA, and he expressly acknowledges this is a single-issue matter, stating, "This appeal is focused upon Mr. Le Bourgeois's ADA claim against FMI and [Ketsdever]." In spite of this apparent concession of all other issues, Le Bourgeois argues there are triable issues of fact regarding FMI's implied-in-fact agreement to discharge only for good cause. We reject the argument on its merits.

Not only are Le Bourgeois's material factual assertions contradicted by his own deposition testimony (see *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10]), his legal constructs are fatally flawed. Labor Code section 2922 creates a presumption of at-will employment. True, the presumption may be rebutted by evidence of an express or implied agreement of continued employment in the absence of good cause for termination. (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 326 [171 Cal.Rptr. 917].) But, contrary to Le Bourgeois's assertion, it is not enough to show the employee successfully completed a probationary period, or the employer did not fire anyone arbitrarily for several years. Rather, as in the case in any other contract, the courts must "consider the totality of the parties' relationship: Agreement may be ' "shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." ' . . ." (*Id.* at p. 329, citation omitted.) Here, on a record showing employment of only three years' duration, no promotions, no merit awards, and no documents, employee manuals, or policy statements indicating good cause was needed for termination, the trial court correctly found an absence of triable issues of material fact regarding an implied contract for continued employment.

Cal.App.3d 218, 228 [220 Cal.Rptr. 712]), we exercise our prerogative to reach the merits of some of those issues. (See, e.g., fn. 4, *ante*, and discussion of Le Bourgeois's public policy/wrongful discharge claim against Ketsdever, *post*.)

## DISCUSSION

In the ADA, Congress declared there is "a discrete and insular minority" of disabled Americans "faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society." (§ 12101(a)(1) & (7).) The ADA is intended to eliminate discrimination against the disabled. (§ 12101(b)(1).)

### *Le Bourgeois's Discrimination Claim Against Ketsdever*

■ In general, the ADA applies to any employer "engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of" the employer. (§ 12111(5)(A).) Le Bourgeois contends "agent" includes supervisors such as Ketsdever, who therefore may be held personally liable for discrimination claims under the ADA. Unfortunately for Le Bourgeois, in *Reno* v. *Baird, supra,* 18 Cal.4th 640, decided during the pendency of this appeal, our Supreme Court rejected that very contention, presented in the context of the FEHA. The decision leaves no room for doubt: Ketsdever cannot be held personally liable for unlawful employment discrimination under the ADA.

The *Reno* plaintiff, a registered nurse, sued several defendants, including her former supervisor, for discrimination in violation of the FEHA. She alleged she was discharged on the basis of her medical condition, cancer. The trial court granted the supervisor summary judgment. The Court of Appeal reversed, and the Supreme Court reversed the reviewing court. Noting it had declined to reach the issue in *Caldwell* v. *Montoya* (1995) 10 Cal.4th 972 [42 Cal.Rptr.2d 842, 897 P.2d 1320], it held discrimination claims under the FEHA, like such claims under similar federal statutes—title VII of the Civil Rights Act of 1964 (§ 2000e et seq.), the Age Discrimination in Employment Act (ADEA, 29 U.S.C. § 621 et seq.) and the ADA—may be

maintained against employers, but not against supervisors individually. (*Reno* v. *Baird, supra,* 18 Cal.4th at pp. 643-647.)[5]

The *Reno* court adopted the reasoning of *Janken* v. *GM Hughes Electronics* (1996) 46 Cal.App.4th 55 [53 Cal.Rptr.2d 741], observing *Janken* was in accord with " 'a clear and growing consensus' " (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 648) of the circuit courts in its interpretation of "agent" as used in other discrimination statutes. It stated, "The *Janken* court . . . . found two possible constructions of the 'agent' language [in Government Code section 12926, subdivision (d)]. 'One construction is . . . that by this language the Legislature intended to define every supervisory employee in California as an "employer," and hence place each at risk of personal liability whenever he or she makes a personnel decision which could later be considered discriminatory. The other construction is the one widely accepted around the country: that by the inclusion of the "agent" language the Legislature intended only to ensure that *employers* will be held liable if their supervisory employees take actions later found discriminatory, and that *employers* cannot avoid liability by arguing that a supervisor failed to follow instructions or deviated from the employer's policy.' [Citation.]" (*Id.* at p. 647, original italics.)[6]

The *Reno* court also approved *Janken*'s conclusion it would be incongruous to exempt small employers from discrimination claims under FEHA, title VII, ADEA and ADA, but hold individual nonemployers liable. (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 650; see, e.g., *Miller* v. *Maxwell's Intern. Inc.* (9th Cir. 1993) 991 F.2d 583, 587 ["If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liabilities to run against individual employees."].) As *Reno* states, "We do not decide merely whether individuals should be held liable for their wrongdoing, but whether all supervisors

[5]Supervisors continue to face individual liability for harassment. As noted by the *Reno* court, "Harassment claims are legitimately distinguished from discrimination claims because they are based on different types of conduct. Behavior that gives rise to a harassment claim is not related to performing one's job duties except insofar as it occurs within the work environment. Behavior that gives rise to a discrimination claim, on the other hand, is often indistinguishable from performing one's job duties. Thus, the Legislature properly tailored the FEHA in order to address these distinct claims." (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 657.) Le Bourgeois's appeal does not involve any issue of harassment.

[6]The *Reno* court noted eight circuit courts since 1993 have "either (1) held that the 'agent' language does not create individual liability for discrimination, or (2) found that, although individuals can be sued in their official or representative capacity, they may not be sued in their individual capacity and have no personal liability, or (3) interpreted similar language in a state statute as not creating individual liability." (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 648.) The court found the cases rejecting individual liability for supervisory employees "persuasive in both number and reasoning." (*Id.* at p. 659.)

should be subjected to the ever-present threat of a lawsuit each time they make a personnel decision. Litigation is expensive, for the innocent as well as the wrongdoer. By limiting the threat of lawsuits to the employer itself, . . . the Legislature has drawn a balance between the goals of eliminating discrimination in the workplace and minimizing the debilitating burden of litigation on individuals." (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 663.)

Moreover, again citing to *Janken* at considerable length, the *Reno* court noted the potential of discrimination liability " 'would place a supervisory employee in a direct conflict of interest with his or her employer every time that supervisory employee was faced with a personnel decision. . . . [It] would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended. . . . The insidious pressures of such a conflict present sobering implications for the effective management of our industrial enterprises and other organizations of public concern. We believe that if the Legislature intended to place all supervisory employees in California in such a conflict of interest, the Legislature would have done so by language much clearer than that used here.' " (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 653.)

*Reno* deals with medical-condition discrimination under FEHA, but its reasons, rationale and cited decisions mandate the result here.[7] Le Bourgeois cannot recover from Ketsdever individually for ADA discrimination.[8]

### Le Bourgeois's Public Policy/Wrongful Discharge Claim Against Ketsdever

Le Bourgeois attempted to hold Ketsdever liable for wrongful constructive discharge based on his work-related injury, in violation of the public policy

---

[7]As noted by the *Janken* court, the employer/agent language used in the antidiscrimination statutes is virtually identical. "Title VII defines employer as 'a person . . . who has fifteen or more employees . . . and any agent of such a person.' The ADEA defines employer as 'a person . . . who has twenty or more employees' including 'any agent of such a person.' The ADA defines employer as 'a person . . . who has 15 or more employees . . . and any agent of such person.' These three federal statutes thus contain definitions of employer identical in all relevant respects to the definition of employer contained in the FEHA[.]" (*Janken* v. *GM Hughes Electronics, supra,* 46 Cal.App.4th at p. 66, fns. omitted.)

[8]See California's federal district court decision reaching the same conclusion prior to the *Reno* decision. (*Stern* v. *California State Archives* (E.D.Cal. 1997) 982 F.Supp. 690; cf., *Ostrach* v. *Regents of the University of California* (E.D.Cal. 1997) 957 F.Supp. 196.)

expressed in the FEHA.[9] This precise issue was flatly rejected by the *Reno* court, which stated, "Our conclusion that individual supervisors may not be sued under the FEHA applies likewise to this [public policy/wrongful discharge] cause of action." (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 663.) Referring to *Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074], the *Reno* court noted " 'the "public policy" on which [the] plaintiff relies' " must be applicable to the defendant. (*Reno* v. *Baird, supra,* 18 Cal.4th at p. 663.) The FEHA does not apply to individual nonemployer supervisors, thus "[i]t would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric. Because plaintiff may not sue Baird as an individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in violation of public policy." (*Id.* at p. 664.) The trial court properly granted Ketsdever summary judgment.[10]

### *Le Bourgeois's Discrimination Claim Against FMI*

The only issue remaining is whether there are triable issues of material fact on Le Bourgeois's disability discrimination cause of action against FMI. In relevant part, the ADA provides, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." (§ 12112(a).)

The propriety of summary judgment is measured against the allegations of the complaint. The ADA cause of action, boiled down to its essence, alleges FMI did not immediately reinstate Le Bourgeois when, after an absence of more than one year, he returned to reclaim his position as credit manager. The employer's entitlement to summary judgment presents a pure question of law which we review independently. (*Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1730 [35 Cal.Rptr.2d 181].)

---

[9]Without any support in the record is Le Bourgeois's suggestion the *Tameny* public policy claim was based on actions taken by FMI in response to Le Bourgeois's filing a complaint with DFEH. As the complaint reveals, the underlying basis of the tortious discharge cause of action is FEHA.

[10]We need not concern ourselves with the trial court's reasons for granting summary judgment. "[W]here there is no genuine issue of material fact, the appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court. [Citations.] Thus, we must affirm so long as any of the grounds urged by [the moving party], either here or in the trial court, entitles it to summary judgment. [Citation.]" (*Western Mutual Ins. Co.* v. *Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].)

■ Employment discrimination claims are analyzed "under a three-step framework. First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.[11] The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual. [Citations.]" (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236 [66 Cal.Rptr.2d 830].)

■ However, like all other defendants, the employer who seeks to resolve the matter by summary judgment must bear the initial burden of showing the action has no merit. (Code Civ. Proc., § 437c, subd. (c).) The employer carries its burden if, inter alia, it "establish[es] an undisputed legitimate, nondiscriminatory basis for [the employment decision.]" (*Valdez v. City of Los Angeles* (1991) 231 Cal.App.3d 1043, 1051 [282 Cal.Rptr. 726].) Absent "substantial responsive evidence . . . of the untruth of the employer's justification or a pretext, a law and motion judge may summarily resolve the discrimination claim." (*University of Southern California v. Superior Court* (1990) 222 Cal.App.3d 1028, 1039 [272 Cal.Rptr. 264].)

Here are the employer's material, uncontradicted facts, supported by admissible evidence, including the depositions of Ketsdever, Kopps and Le Bourgeois, whose admissions were largely responsible for FMI's success:

Le Bourgeois was away from his job for more than one year. In the first few months, Ketsdever, concerned about filling the credit manager position, several times asked Le Bourgeois how long he anticipated being out; he was unable to say. Four months after Le Bourgeois's surgery, Ketsdever again contacted him to check on his progress and find out if and when he would return. Le Bourgeois did not know when he would be back, but said he was not doing well and was in a lot of pain. At that point, FMI decided the credit manager position had to be filled with another person because it was a "key" job, requiring continuity.

When Le Bourgeois called in May 1993 to say he wanted to report back to work, Ketsdever told him to report to Kopps, complete some paperwork and present his medical release. Kopps explained to Le Bourgeois that his job had been filled, but the company was attempting to find him another position

---

[11] An employee suing for disability discrimination must prove he or she is disabled within the meaning of the ADA, qualified to perform the essential functions of the job, with or without reasonable accommodations, and has suffered discriminatory employment action on account of his or her disability. (*White v. York Intern. Corp.* (10th Cir. 1995) 45 F.3d 357, 360-361.) Because we affirm the summary judgment on other grounds, we need not decide whether Le Bourgeois has a prima facie discrimination case.

which would accommodate his limitations. She told him to seek vocational rehabilitation and retraining, at FMI's expense, pending either the creation of a new job for him or the opening of an existing job, whichever came first. FMI decided to put Le Bourgeois on inactive status for the sole reason the credit manager position had been filled and there were no comparable positions open at the time. Had a position been open, Le Bourgeois would have been placed in it. By the time the marketing coordinator position was created specifically for Le Bourgeois, he was not interested in working for FMI. He assumed his employment was terminated, but made no effort to contact Ketsdever or Kopps to clarify his status.

The above facts establish FMI's legitimate, nondiscriminatory reason for its actions. The credit manager position was filled because FMI could not keep it open indefinitely, Le Bourgeois was unavailable, and FMI had no idea when he might be coming back. When Le Bourgeois showed up after a one-year absence and announced he would soon be ready to start working, FMI had no openings, either in the credit manager position or in any comparable position.

In light of FMI's showing, to avoid summary judgment Le Bourgeois had to "offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination." (*Hersant* v. *Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005 [67 Cal.Rptr.2d 483].) He had to " 'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," . . . and hence infer "that the employer did not act for . . . [the asserted] non-discriminatory reasons.' " (*Id.* at p. 1005, citations omitted, original italics.)

Did Le Bourgeois present such evidence? In a word, no. He presented no evidence there were job openings when he returned to FMI. At his deposition, he admitted his discrimination claim was based on a second tier hearsay statement from an unknown declarant who said Ketsdever said she did not really believe Le Bourgeois was injured. This is patently inadmissible evidence to which FMI's objections were properly sustained. Le Bourgeois

admitted he had no personal knowledge of discriminatory intent on the part of his employer.[12]

Le Bourgeois's only other evidence regarding discriminatory animus was a piece of paper containing what he claimed were Kopps's handwritten notes, supposedly jotted down during a telephone conversation with Le Bourgeois. FMI objected to this evidence for lack of authentication. The trial court did not sustain FMI's objection, but it should have: Le Bourgeois had no personal knowledge of the genesis of the document, and although he took Koops's deposition, he did not even bother to inquire about it.

Assuming the document were admissible, however, as a matter of law it did not provide a substantial[13] evidentiary basis for a reasonable fact finder to conclude FMI's reasons for its employment decisions were untrue or pretextual. The paper was scattered with words and phrases, such as, "Tread cautiously—ADA"; "Perm disability"; "[Labor Code, § ] 132a claim"; "Opportunity for COBRA which he qualifies for"; "Can file for unemployment insurance"; "Treat like a layoff, don't call it a layoff"; and "Reasonable to assume he could have his job back?" No jury could find these comments relevant to, much less contradictory of, FMI's evidence the credit manager position was filled out of business necessity when Le Bourgeois was unavailable, and when he showed up after a one-year absence, there were no immediate openings.[14]

---

[12]The rule is established "[t]he admissions of a party receive an unusual deference in summary judgment proceedings. An admission is binding unless there is a credible explanation for the inconsistent positions taken by a party. [Citations.]" (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 396 [282 Cal.Rptr. 508],) Further, ". . . the nonmoving party's admissions may be used to establish that no material factual issues remain to be resolved by trial. [Citation.]" (*Cory* v. *Golden State Bank* (1979) 95 Cal.App.3d 360, 366 [157 Cal.Rptr. 538].)

[13]"Substantial evidence, as has often been held, is evidence 'of ponderable legal significance.' [Citation.] It is evidence 'reasonable in nature, credible, and of solid value.' [Citation.]" (*County of Mariposa* v. *Yosemite West Associates* (1988) 202 Cal.App.3d 791, 805 [248 Cal.Rptr. 778].)

[14]Le Bourgeois's claim of wrongful termination/constructive discharge violating the FEHA's prohibition against disability discrimination fails for the same reason his ADA claim fails: He had no evidence that FMI made any employment decisions on the basis of Le Bourgeois's asserted disability. Thus, we need not decide whether FMI is correct in arguing the wrongful discharge cause of action under the FEHA is barred by Labor Code section 132a.

In passing, however, we note the case on which FMI relies, *Angell* v. *Peterson Tractor, Inc.* (1994) 21 Cal.App.4th 981 [26 Cal.Rptr.2d 541], had no occasion to consider the 1993 amendment to Government Code section 12993, subdivision (a), as follows: "The provisions of this part shall be construed liberally for the accomplishment of the purposes thereof. Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil

## Conclusion

FMI and Ketsdever utilized the summary judgment procedure which fulfilled its laudatory purpose of expediting the litigation and eliminating the further waste of time and money which would have resulted from an utterly needless trial. (See, e.g., *PMC, Inc.* v. *Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877].) As other courts have aptly observed, " '[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one.' " (*Frank and Freedus* v. *Allstate Ins. Co.* (1996) 45 Cal.App.4th 461, 469 [52 Cal.Rptr.2d 678], citing *Larson* v. *Johannes* (1970) 7 Cal.App.3d 491, 507 [86 Cal.Rptr. 744].)

The judgment is affirmed. FMI shall recover its costs on appeal.

Wallin, Acting P. J., and Rylaarsdam, J., concurred.

---

Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age, *unless those provisions provide less protection to the enumerated classes of persons covered under this part.*" (Italics added.) As stated in *Muller* v. *Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 439-440, footnote 4 [71 Cal.Rptr.2d 573], "This issue [of the exclusivity of workers' compensation remedies in work-related disability discrimination claims] is currently pending before the California Supreme Court, which granted review in two cases reaching contrary results as to whether [the] 1993 amendment to [Government Code] section 12993 eliminated Labor Code section 132a's preemption of FEHA claims for discrimination based on work-related injuries. [Citations.]"