Filed 3/27/15  Armenta v. Morris National, Inc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ISIDORA ARMENTA, | B255575 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC490036) |
| v. | |
| MORRIS NATIONAL, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Law Offices of Ramin R. Younessi, Ramin R. Younessi, Glen H. Mertens and Christina Coleman for Plaintiff and Appellant.

Jackson, DeMarco, Tidus & Peckenpaugh and Ron S. Brand for Defendant and Respondent.

Plaintiff Isidora Armenta appeals from a judgment dismissing her age discrimination lawsuit following the granting of defendant Morris National, Inc.'s (MNI) motion for summary judgment. We affirm the judgment.

## BACKGROUND

In February 2011, Armenta was terminated from her employment with MNI. At that time, she was 63 years old, and had worked at MNI for 23 years. MNI manufactures, imports, and distributes confectionary specialty foods and gift packs. MNI employs permanent employees, who work year-round, and seasonal employees, who work from May through November. Employees who work full-time receive employer benefits, such as health and life insurance, regardless of whether they are permanent or seasonal employees; part-time employees do not receive those benefits. At times during her employment Armenta was a permanent employee, and at other times she was a seasonal employee. However, she always was a full-time employee.

In August 2012, Armenta filed a lawsuit against MNI, alleging four causes of action: (1) breach of the covenant of good faith and fair dealing; (2) age discrimination in violation of the Fair Employment and Housing Act (FEHA); (3) wrongful termination in violation of public policy; and (4) retaliation in violation of Government Code section 12940, subdivision (h). The complaint alleged that Armenta worked for MNI as a machine operator from July 1988 until February 2011. She operated a machine that made special ordered chocolates with liqueur, and her duties included some machine maintenance, inserting molds into machines, covering chocolate molds, and placing chocolates in refrigeration units. In addition, she performed general cleaning duties, sweeping floors, washing molds and baskets using a special machine, and packaging chocolates and other candies. The complaint alleged that in February 2011, the machine Armenta

2

worked with was phased out and replaced with a newer machine, and that all of the 10 to 12 people who worked with the phased out machine were relocated, except for Armenta. All of the relocated workers were younger than Armenta. Armenta alleged that even though she was trained for and was able to perform other duties, such as operating the machines for washing and cleaning molds and baskets, she received a termination letter from MNI stating that she was being terminated due to the elimination of her job position.

A.    *MNI's Motion for Summary Judgment*

MNI filed a motion for summary judgment, or in the alternative, summary adjudication in December 2013. MNI argued that it was entitled to judgment because Armenta was an at-will employee and was laid off as part of a reduction in force, and there is no evidence that MNI acted with a motive to discriminate based upon her age. To support its motion, MNI submitted, among other evidence, declarations from its Vice President of Manufacturing, Production Planner/Cost Controller, Production Supervisor, and Human Resources Manager at the time of Armenta's termination.

The Vice President of Manufacturing, Claude Douessin, declared that MNI suffered financially in 2008. He met with various MNI employees, including the President, Gerry Zubatoff, and the Production Planner/Cost Controller, Theo Bradford, to discuss how to address MNI's financial problems. Bradford was tasked with determining what MNI should do to reduce costs. Based upon those meetings and Bradford's analysis, MNI decided to reduce costs by laying off 13 of MNI's full-time employees as part of a reduction in force; that layoff took place on January 16, 2009.

Douessin declared that in 2010, MNI determined it needed to further reduce costs, and decided to lay off three more full-time employees, with the layoff to take

3

effect in early 2011. MNI's Production Supervisor, Marvin Quintanilla, was tasked with determining which employees should be laid off. Quintanilla selected Armenta, Leticia Espejel, and Martha Garcia. Armenta was 63 years old,[1] Espejel was 39 years old, and Garcia was 40 years old at the time they were laid off. Quintanilla informed Douessin and Bradford of his determination, and Douessin made the ultimate decision to terminate Armenta, Espejel, and Garcia. Douessin declared that his decision to terminate Armenta had nothing to do with her age.

Bradford, MNI's Production Planner/Cost Controller, explained in his declaration that he is responsible for coordinating work between MNI's departments, and that his duties include determining how many employees are needed for production at any given time. He stated that he conducted an analysis in 2007 of how MNI could reduce costs and increase profits. As part of that analysis, he looked at what would be the optimal number of employees to run the manufacturing machines efficiently and at the lowest possible cost. He determined that MNI could save a considerable amount of money in salary and benefits by reducing the number of full-time employees from 39 to 24. When, in 2008, MNI suffered financially due to the economic slowdown and saw its sales reduced, he was tasked with determining how MNI could reduce its costs. Based on his analysis, he determined that if MNI had a core group of full-time employees who were able to rotate from one department to another and were able to perform production functions in those departments efficiently, MNI would need only 20

---

[1]     Although Douessin declared that Armenta was 62 years old at the time she was terminated, Armenta declared she was 63 years old.

4

full-time employees.[2] By laying off the rest of the full-time employees, MNI would save more than $600,000 in salaries and benefits.

In his declaration, Quintanilla stated that, as a Production Supervisor for MNI, his duties involve planning, coordinating, and controlling MNI's manufacturing processes. As part of his job, he indirectly supervised Armenta at various times during her employment. He declared that he was tasked with recommending to Douessin which full-time employees should be laid off in 2011. He met with other supervisors in the production department -- Araceli Zamora, Virginia Rodriguez, and Nicolas Ferrer -- who had direct knowledge about the work performance of the production employees. He determined the three employees who should be laid off as part of the reduction in force based upon various factors, including reliability, experience, versatility, and efficiency.

Quintanilla stated that he decided Armenta should be laid off because even though she had worked for MNI for many years, her versatility and efficiency were extremely limited, and she was unable to perform tasks that other full-time employees could perform. He declared that Armenta's age had nothing to do with his decision to recommend that she be included in the layoff. He stated that he decided that Garcia should be laid off for the same reason as Armenta, and that Espejel should be laid off because she had only been working in the production department for about a month, and was the least experienced full-time employee.

Cheryl Laws, who was the Human Resources Manager at MNI from October 30, 2006 through April 19, 2013, declared that MNI routinely hired significant numbers of older workers. She stated that during the time she was

---

[2] At that time, MNI had several different product lines, each using a different machine, to produce different kinds of chocolates. Those lines included the Awema line, the 275 line, the 850 line, and the packaging line.

employed by MNI, the company employed 400 to 500 seasonal employees[3] (a mixture of part-time and full-time employees) and 100 to 120 permanent employees (all of whom were full-time), and approximately half of the employees in each group were over 40 years old. She stated that the ages of the 13 full-time employees who were laid off on January 16, 2009 ranged from 23 years old to 56 years old, and that five of the 13 employees were under 40 years old. Regarding Armenta, Laws stated that Armenta had worked both as a permanent employee and as a seasonal employee, but she always was a full-time employee receiving benefits. She also stated that in 2002, Armenta signed an Acknowledgement form (in Spanish) acknowledging that she was an at-will employee and that her length of employment with MNI was not guaranteed for any specified period. Finally, Laws declared that she met with Armenta and the two other laid off employees on February 25, 2011, with a Spanish interpreter, and advised each of the employees that they could apply for part-time seasonal work. Espejel applied for, was offered, and accepted a job as a part-time seasonal employee; Armenta never applied for a part-time seasonal job.

In addition to the above, each of the declarants stated that at no time did Armenta ever complain that she felt she was discriminated against because of her age, that she felt she was being treated differently because of her age, or that anyone at MNI made any demeaning or derogatory remarks or jokes about her age.

In addition to the declarations, MNI also submitted excerpts from Armenta's deposition in support of its summary judgment motion. In those excerpts, Armenta testified that (1) she understood that MNI could terminate her employment at any time; (2) she worked on the machine that made special order chocolates with

---

[3] Laws explained that seasonal employees work from the beginning of May through the end of November. They are laid off at the end of the season and some, but not all, are re-hired at the beginning of the season.

6

liquor, and did not work on any other machine; (3) she never heard or overheard anyone at MNI joke or make any remarks about her age; and (4) she was told when she was terminated that she could reapply as a temporary or seasonal employee, but she never applied for a job with MNI after she was laid off.

B.      *Armenta's Opposition to Summary Judgment Motion*

In opposing the summary judgment motion, Armenta contended there was no bona fide reduction in force because MNI was preparing to add a new production line -- the Tangy Zangy line -- and added 400 new employees two months after she was terminated. She also contended that Douessin, Bradford, and Quintanilla gave different explanations about how the decision to terminate her was made, which she argued shows that MNI's stated reason for terminating her was fabricated. In addition, she disputed MNI's contention that she only worked with one machine and was not able to perform tasks that other full-time employees could perform. Finally, she contended that MNI has a history and policy of age discrimination.

In support of her first contention, Armenta submitted excerpts from the depositions of Douessin and Bradford. Douessin testified that Tangy Zangy was a product that originally was manufactured for MNI in China. In 2010, MNI decided it would make the product in the United States. MNI purchased the machine to make the product in September 2010. The machine arrived in March 2011, and production began in mid-April 2011. MNI needed 36 employees to run the machine, in three shifts of 12 people. Some of those people were full-time employees from the chocolate side of MNI's production department, and the rest were seasonal employees. Bradford testified that at the time of Armenta's termination in February 2011, MNI had 20 to 24 full-time employees in the production department, and that at the time of his deposition (in July 2013), MNI

7

had 50 full-time employees in the production department. He explained the increase in number of employees was due to the addition of the Tangy Zangy line, which produces a totally different kind of candy and runs 24 hours per day, six days per week, and requires around 12 people per shift.

In support of her second contention that different explanations were given regarding the decision to terminate her, Armenta pointed to testimony she submitted from Bradford's, Douessin's, and Quintanilla's depositions, and Douessin's and Quintanilla's declarations filed in support of the summary judgment motion. Bradford testified that he told Douessin in connection with the layoff that MNI should keep the most versatile and portable people, who can move from one process to another in the manufacturing facility and be as proficient in all those jobs. Quintanilla testified at his deposition that he chose the three people to lay off because they had less ability to multitask, or work in different stations, but in his declaration he stated that he based his decision about who to lay off on various factors, including reliability, experience, versatility, and efficiency. Quintanilla also testified at one point in his deposition that he decided that Armenta and the others should be laid off, and later testified that he and the other supervisors made the decision,[4] and still later testified that he simply made a recommendation, even though he stated in his declaration that he made the decision. Douessin testified at his deposition that he did not choose who to lay off, but he stated in his declaration that he made the ultimate decision to lay off Armenta and the others.

---

[4] Quintanilla testified at his deposition that the supervisors he met with to decide who should be laid off were Araceli Zamora, Virginia Rodriguez, and Nick Ferrer. Zamora testified at her deposition that the people who met to decide about the layoff were herself, Quintanilla, Rodriguez, and Raul Canto, the plant manager.

8

Armenta also submitted deposition testimony from Quintanilla in which he stated that Armenta was chosen to be laid off because she had only worked on the Awema line (i.e., the phased-out machine) and cleaning the molds, as well as the packaging line during the off-season, although he admitted that he did not directly supervise Armenta and did not know if she ever worked on any other lines. Armenta disputed Quintanilla's assertion that she had limited experience by pointing to deposition testimony from people who had directly supervised her, Araceli Zamora and Virginia Rodriguez, both of whom testified that Armenta had worked at several positions on other production lines. She also submitted her own declaration in which she stated that over the course of her employment with MNI she had been assigned to every position on all of the production lines, and had never received a warning about her work performance, versatility, or efficiency. Finally, she submitted excerpts from the depositions of several MNI employees who were not laid off, some of whom testified that there were certain positions and/or lines they generally did not work.

To support her contention that MNI has a history and policy of age discrimination, Armenta submitted deposition testimony from Jesse Zamora, a full-time employee who currently works in the shipping department at MNI. Zamora testified that he had been the production supervisor at MNI for 20 years and was demoted after he filed charges with the Department of Fair Housing and Employment against Raul Canto, his supervisor, for discrimination based upon his age and disability (he is diabetic). Zamora explained that Canto treated him badly, and told him that he wanted a younger crew and that he was going to get rid of him (Zamora). Zamora also testified that Canto laid him off twice, but he was called back to work by Cheryl Laws both times. He was a production supervisor when he was laid off the first time, and he was called back into quality control. He worked

in quality control for two years (and was laid off for a time), and then was put into a position in the warehouse, in shipping and receiving.

In addition to Jesse Zamora's deposition testimony, Armenta submitted deposition testimony from two older employees, Jose Rodriguez and Gilberto Resendez, each of whom testified they had been laid off multiple times, and a younger employee, Sandra Banda Lagunas, who testified she had never been laid off.

Finally, Armenta submitted MNI's responses to special interrogatories, which included a list of all MNI employees and their ages at the time she was laid off. That list shows there were 38 people in the production/samples and warehouse departments; two (including Armenta) were age 60 or older, seven were age 50 to 59, and 16 were age 40 to 49. Armenta was the oldest, at age 63.

C.    *MNI's Reply*

In response to Armenta's opposition, MNI submitted additional evidence, including additional excerpts from the depositions of Armenta's supervisors, Zamora and Rodriguez, and declarations from the current Human Resources Manager, Claudia Macias, and Zamora. Zamora testified that when she worked with Armenta, Armenta always took the position at the beginning of the line; she did not want to work in the middle or end positions. Zamora tried to train Armenta to work in the middle position, but Armenta could not do the work. One time, Zamora asked Armenta to take over for her at the middle position while Zamora went to get something, and when Zamora came back Armenta had a pile of product at her position. When Zamora asked Armenta what happened, Armenta told her she could not do that work. Armenta also told Zamora that she (Armenta) could not do the work required for the end position. Zamora concluded that Armenta was very good in some positions, but she was not able to cover the other positions.

10

Armenta's other direct supervisor, Rodriguez, testified that sometimes she would assign Armenta to work in a position that Armenta did not want to work, and Rodriguez would have to assign her to a different position. Rodriguez found that Armenta was not cooperative, and would complain about not being able to do the work she was assigned to do, even though she had been trained to do that work.

MNI also submitted two declarations addressing the deposition excerpts submitted by Armenta in which Araceli Zamora testified that Raul Canto was involved in the decision about which employees should be laid off in 2011.[5] In one declaration, Araceli Zamora stated that she had been mistaken when she gave that testimony at her deposition. She stated that Canto was involved in the decision to lay off 13 employees in January 2009, but he was not involved in the 2011 layoff because he had been terminated by MNI in May 2009. In the other declaration, the current Human Resources manager, Claudia Macias, declared that MNI terminated Canto's employment on May 14, 2009, when his position was eliminated; she attached a copy of the Agreement for Separation of Employment between MNI and Canto, which was signed by Canto and MNI's Chief Financial Officer in May 2009.

D.    *Trial Court's Ruling*

The hearing on MNI's summary judgment motion was held on March 5, 2014, and the trial court took the matter under submission. The following day, the court issued its minute order granting the motion. The court noted that Armenta dismissed the first and fourth causes of action, leaving only the second cause of action for age discrimination under the FEHA and the third cause of action for

---

[5]    As noted, Armenta submitted deposition testimony from Jesse Zamora that Canto told him that he (Canto) wanted a younger crew and that he was going to get rid of him. MNI objected to that evidence on hearsay and relevance grounds.

wrongful termination in violation of public policy (age discrimination). The court found that MNI had presented sufficient evidence to show a legitimate non-discriminatory reason for Armenta's termination, and Armenta did not present evidence that this reason was pretext or false. The court observed that "[a] plaintiff's suspicions of improper motives based primarily on conjecture and speculation are not sufficient to raise a triable issue of fact to withstand summary judgment." The court also found that Armenta's use of Jesse Zamora's testimony as to what Raul Canto said was hearsay. The court entered judgment in favor of MNI, from which Armenta appeals.

## DISCUSSION

A.    *Summary Judgment Rules and Standard of Review*

In the trial court, a defendant moving for summary judgment must present evidence that one or more elements of the plaintiff's claim cannot be established or that there is a complete defense to the claim. If the defendant meets that burden of production, the burden shifts to plaintiff to show that a triable issue of material fact exists as to that claim or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The plaintiff shows that a triable issue of material fact exists by pointing to evidence that would allow a reasonable trier of fact to find that fact in favor of the plaintiff. (*Ibid.*) If plaintiff fails to do so, the defendant is entitled to judgment as a matter of law.

On appeal from a summary judgment, we make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

12

B.    *Law Governing Discrimination Claims*

In analyzing employment discrimination claims, California courts apply the three-stage burden shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*).)  Under that test, the plaintiff has the initial burden to establish a prima facie case of discrimination.  "Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, . . . and (4) some other circumstance suggests discriminatory motive."  (*Id.* at p. 355.)  If the plaintiff satisfies this initial burden, a presumption of discrimination arises and "the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to 'raise[] a genuine issue of fact' and to 'justify a judgment for the [employer,]' that its action was taken for a legitimate, nondiscriminatory reason."  (*Id.* at pp. 355-356.)  "If the employer sustains this burden, the presumption of discrimination disappears.  [Citations.]  The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive.  [Citations.]  In an appropriate case, evidence of dishonest reasons, considered together with the elements of the prima facie case, may permit a finding of prohibited bias.  [Citations.]  The ultimate burden of persuasion on the issue of actual discrimination remains with the plaintiff.  [Citations.]"  (*Id.* at p. 356.)


C.    *Armenta's Contentions on Appeal*

In her appellant's opening brief, Armenta contends the trial court erred in granting summary judgment to MNI because she presented evidence from which a trier of fact could conclude that MNI's stated reason for terminating Armenta was

13

pretextual as applied to her, and that MNI actually was motivated by discrimination. In her appellant's reply brief, Armenta also contends that MNI failed to meet its burden on summary judgment to produce evidence sufficient to establish a legitimate, non-discriminatory reason for her termination. We disagree with Armenta's contentions in her opening brief, and find she forfeited her contention made for the first time in her reply brief.

1. *Pretext*

Armenta argues that she raised a triable issue of fact precluding summary judgment because a reasonable trier of fact could conclude that the reason MNI gave for terminating Armenta was pretextual, based upon what she asserts are inconsistencies and conflicts in the evidence regarding MNI's stated reason.

There is no doubt that, in some cases, a plaintiff may defeat an employer's motion for summary judgment by """"demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for . . . [the asserted] non-discriminatory reasons.'""" (*Le Bourgeois v. Fireplace Manufacturers, Inc.* (1998) 68 Cal.App.4th 1049, 1059, quoting *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005.) In this case, Armenta argues that a reasonable factfinder could find MNI's stated reason for terminating her was unworthy of credence because: (1) Quintanilla stated that he chose Armenta to be part of the layoff for the same reason he chose Martha Garcia, but there was no evidence that Armenta had the same kind of attendance and reliability issues that Garcia had; (2) Quintanilla stated that Armenta had not worked in multiple positions and was not as versatile as other employees, but there was evidence that she had worked in those positions; (3) Quintanilla stated that

14

when determining which employees should be laid off he considered the employees' reliability, experience, versatility, and efficiency, but there was no competent evidence that Armenta was considered unreliable, inexperienced, or inefficient by her supervisors; and (4) there is conflicting testimony as to who was involved in making the decision to lay off Armenta. Examination of the entire record, however, demonstrates that these alleged inconsistencies were either inconsequential or not inconsistent at all.

For example, Armenta is correct that Quintanilla stated in his declaration filed in support of the summary judgment motion that he chose Garcia for termination for the same reason he chose Armenta. She also is correct that there was evidence that Garcia had attendance problems, and that Armenta did not. But the fact that Garcia had attendance problems and Armenta did not is not evidence of an inconsistency.

When Quintanilla was asked at his deposition why he chose Garcia, he testified: "Because she was not [a] reliable person. She can't do all the tasks. She couldn't do all the tasks." When asked if, by "not reliable," he meant she had a lot of absences, he said "Yes." But he also said he meant that "[s]he can't work by herself," that "[w]hen she's assigned for something, she's kind of slow. So somebody has to be watching her." When asked why he chose Armenta, he testified: "Because she only have limited experience working in just a few stations." Later, he explained that he had complaints about the quality of Armenta's work because "they can't put her in some areas because it's hard for her to keep up in that specific station." In other words, he found that both Garcia and Armenta had difficulty doing all the tasks in all of the stations, and both were

15

slow.[6]  The fact that Garcia also had an absentee problem does not establish the kind of inconsistency from which one could conclude that Quintanilla's reason for choosing Armenta for termination was false.

Similarly, the fact that Quintanilla testified that Armenta was chosen for termination because she had only limited experience working in a few stations even though Armenta provided evidence that she had worked in every position on all of the production lines does not, in light of the entire record, demonstrate an inconsistency that would justify a conclusion that MNI's reason for terminating her was false.  In fact, Quintanilla admitted that he did not know if Armenta had worked on production lines other than the Awema line because he did not directly supervise her.  But he also explained that in making the decision about which employees should be laid off, he met with Armenta's direct supervisors.  And although those supervisors admitted that Armenta had worked on other production lines, they testified that she could not do the work required at many of the positions on those lines and therefore she would not work at those positions.

Relying on Quintanilla's statement that he considered employees' reliability, experience, versatility, and efficiency when determining who should be laid off, Armenta asserts that MNI's proffered reason for terminating her is dishonest because there was no evidence that Armenta was unreliable, inexperienced, or inefficient.  The contention is unsupported by the record and makes little sense.  First, as noted, one of Armenta's direct supervisors testified that Armenta had very little experience (if any) at some of the positions, and was inefficient at those

---

[6]  The direct supervisors of Garcia and Armenta confirmed Quintanilla's conclusion. Araceli Zamora testified that when MNI shut down the Awema line (the 196 line), all of the people working on that line, including Armenta and Garcia, were moved to other lines, but Garcia, like Armenta, could not handle all of the positions on those other lines. Rodriguez testified that Garcia, like Armenta, complained about not being able to do the work required at certain positions.

16

positions. Another supervisor testified that Armenta was not cooperative, and complained about being assigned certain work, requiring the supervisor to assign her different work. Second, Armenta's assertion seems to suggest that Quintanilla's choice of employees to lay off necessarily would be suspect unless the employees scored poorly on all of the factors Quintanilla considered. But the evidence shows that MNI's ultimate goal was to retain the most versatile employees, who could move from one production line to another, and be proficient at all of the jobs. Quintanilla was informed of this goal, and therefore needed to determine which three employees were *least* versatile and *least* proficient at all of the jobs. It was not inconsistent for Quintanilla to do this by considering each employee's reliability, experience, versatility, and efficiency. Nor was it inconsistent for him to choose someone who may have been reliable and experienced, because an employee can be found to be reliable and experienced while also being found to be less versatile and less proficient at all of the jobs than other employees.

Finally, Armenta's assertion that there was conflicting testimony as to who was involved in making the decision to terminate her as part of the layoff is based, for the most part, on semantics. She notes that Quintanilla stated that he made the decision that Armenta should be laid off, but also stated that he did not make the decision, and that Douessin stated that he made the final decision, but also stated that he was not involved in that process. There is no question that at various points Quintanilla declared or testified that he "decided" who should be laid off, and at other points he said he "recommended" who should be laid off. It is clear from the context of those statements, however, that what Quintanilla meant was that he made the decision about who to recommend to be laid off. Similarly, when viewed in context, Douessin's statement that he was not involved in the process of choosing Armenta to be laid off is not at all inconsistent with his statement that he

17

made the ultimate decision to lay off Armenta. As Douessin explained, he told Quintanilla that Quintanilla needed to find three people to lay off, and that he wanted Quintanilla to keep people who could work all the production lines. Thus, Douessin correctly testified that he was not involved in the process of determining which three people should be laid off. But the fact that Douessin did not participate in the process of choosing Armenta and the others does not mean that he did not make the ultimate decision to lay them off, given that he made the decision to lay off three people and then acted upon Quintanilla's recommendation.

To the extent Armenta relies upon inconsistent statements about whether former plant manager Raul Canto was involved in deciding who should be laid off, MNI provided evidence to show that the inconsistency was the result of a mistake. As noted, Araceli Zamora testified at her deposition -- taken more than two years after Armenta was laid off -- that she, Canto, Quintanilla, and Rodriguez discussed which employees should be laid off. But MNI provided a declaration from Zamora stating that Canto was involved in the decision about who should be laid off in 2009, not in the decision about the 2011 layoff, and that she was mistaken at her deposition because Canto had been terminated by MNI in May 2009. MNI also provided proof of that termination in May 2009. Thus, Zamora's misstatement at her deposition cannot reasonably be considered as proof that MNI stated reason for terminating Armenta was pretextual.

In short, we conclude that none of the purported inconsistencies Armenta cites, considered separately or collectively, is sufficient to allow a reasonable factfinder to find that MNI's proffered reason for terminating Armenta is unworthy of credence and is a pretext for discrimination. Therefore, the trial court properly granted MNI's motion for summary judgment.

18

## 2. *Discriminatory Motive*

Even if Armenta had shown that MNI's stated reason for terminating Armenta was unworthy of credence, we find that summary judgment was properly granted because Armenta failed to produce evidence sufficient to permit a rational inference that MNI's actual motive was discriminatory. As the Supreme Court observed in *Guz*: "Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the true cause* of the employer's actions. [Citation.] Accordingly, the great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory." (*Guz*, *supra*, 24 Cal.4th at p. 361.)

In this case, the only evidence of a discriminatory motive that Armenta presented was (1) Jesse Zamora's testimony that Canto told him that he (Canto) wanted a younger crew and was going to get rid of Zamora; (2) Zamora's testimony that he was demoted after he filed a charge of age and disability discrimination with the Department of Fair Housing and Employment; and (3) testimony showing that Zamora and two other older employees had been laid off multiple times, but a younger employee was never laid off. This evidence is insufficient to allow a trier of fact to conclude that MNI's actual motive in laying off Armenta was discriminatory.

First, we note that the trial court sustained MNI's objection to Zamora's testimony about Canto's statement to him. Armenta challenges that ruling, but we need not determine whether the statement was properly excluded. Even if the

19

statement is admissible, it is not relevant to show that MNI's decision to terminate Armenta was motivated by discrimination because there is undisputed evidence that Canto was not employed by MNI at the time Armenta was terminated.

For similar reasons, we find that Zamora's testimony that he was demoted after he filed a complaint with the Department of Fair Housing and Employment is not relevant to show MNI's alleged discriminatory motive. Zamora testified that he was demoted *by Canto*, and that he does not know if the demotion had anything to do with his age. He also testified that his complaint was based upon *Canto's* conduct, and the Department did not pursue the case.[7]

Finally, Armenta's evidence testimony showing that Zamora and two other older employees had been laid off multiple times, but a younger employee was never laid off is irrelevant in light of the fact that the three older employees were rehired by MNI and were still working there. As some courts have observed, """[c]laims that employer animus exists in termination but not in hiring seem irrational.""" (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 809.)

In light of the absence of relevant evidence from which a reasonable factfinder could infer a discriminatory motive, we conclude the trial court did not err by granting summary judgment in favor of MNI.

### 3.    *Armenta Forfeited the Contention Raised in Her Reply Brief*

The arguments Armenta raised in her opening brief on appeal focused entirely on whether purported inconsistencies and conflicts in the evidence established pretext and whether there was evidence of a discriminatory motive.

---

[7]    With its reply in support of its summary judgment motion, MNI submitted a copy of the Notice of Case Closure, dated January 8, 2009, stating that the Department "is unable to conclude that the information obtained establishes a violation of the statute."

20

She raises an additional argument in her appellant's reply brief; she argues that MNI failed to meet its burden to produce evidence in support of its summary judgment motion showing that its decision to reduce its workforce was necessary. She appears to argue that she was not required to raise this issue in her opening brief because this court reviews the trial court's ruling de novo, and it is "Respondent's job" to show that it met its burden. She is mistaken. It is well established that arguments raised for the first time in the appellant's reply brief will not be considered unless good reason is shown for the failure to present them before. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, p. 790, and cases cited therein.) While it may be "Respondent's job" to show that it met its burden on summary judgment if the appellant argues in her opening brief that the respondent failed to meet its burden below, the appellant is responsible for framing the issues on appeal in her opening brief, and the respondent is not required to address issues that the appellant does not raise. Therefore, we find Armenta has forfeited the issue of whether MNI met its burden on summary judgment by failing to raise the issue in her opening brief.

**DISPOSITION**

The judgment is affirmed.  MNI shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.