Filed 5/25/16  Darrington v. United Parcel Service CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DIALLO DARRINGTON, Plaintiff and Appellant, v. UNITED PARCEL SERVICE, Defendant and Respondent. | D067595 (Super. Ct. No. 37-2013-00029354-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Affirmed.

Bellatrix and Alicia Irene Dearn, Ross Matthew Poole, Melissa N. Engle for Plaintiff and Appellant.

Wilson Turner Kosmo and Claudette G. Wilson, Michael S. Kalt, Daniel Gunning for Defendant and Respondent.

Diallo Darrington appeals a summary judgment in favor of his former employer United Parcel Service (UPS) on his complaint for violation of Labor Code section 1102.5, wrongful termination in violation of public policy, disability discrimination,

failure to accommodate his disability, racial discrimination, retaliation, and hostile work environment harassment. On appeal, Darrington challenges the court's ruling on all causes of action except his Labor Code section 1102.5 and hostile work environment harassment claims. He argues he raised triable issues of fact, including as to whether he had a disability, whether he suffered discrimination based on his disability and race, whether UPS failed to provide him with a disability accommodation, whether UPS's proffered reason for his termination was merely a pretext, whether UPS terminated him in retaliation for requesting and enforcing his right to an accommodation, and whether UPS wrongfully terminated his employment. We conclude Darrington has not raised triable issues of fact sufficient to defeat summary judgment and, accordingly, affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2004, UPS hired Darrington as a preloader responsible for loading packages onto trucks for delivery. Starting in 2006, Darrington also occasionally worked as a "cover driver," which meant that he would fill in as a package car driver when there were not enough drivers available or there was an overflow of volume. On Friday of each week, UPS posted a list of employees selected to serve as cover drivers, based on seniority, for the following week. If Darrington was selected as a cover driver, he would perform those duties instead of his preload duties and his preload supervisor would be notified of his absence. If he was not identified as a cover driver, Darrington was required to report to his normal preload duties.

In July 2011, while working his preload duties, Darrington injured his back and wrist when boxes fell on him. UPS's safety director, Paul Baker, informed Darrington

2

that James Kenny, a preload supervisor, would attempt to convince Darrington to not see a doctor. Kenny later told Darrington to go home and rest and if Darrington did not feel better the next day, Kenny would take him to the doctor.

The next day, Darrington reported to work and informed Kenny that he was still in pain and needed to see a doctor. At that point, Kenny tried to convince Darrington not to go to the doctor because it would cost UPS $12,000 if he did so. Darrington went home. After a weekend, Darrington again returned to work and requested to see a doctor. This time, Kenny stated, "UPS is going to come after you if you do this." Kenny ultimately took Darrington to see a doctor. The doctor examined Darrington and released him to return to full duty without restrictions that day.

When Darrington returned to work, he informed his supervisor that he was still in pain and was having difficulty grabbing boxes. The supervisor had other preloaders help Darrington so that he could keep pace. Darrington pushed to become a "small sorter," which he had signed up for approximately one year earlier. The small sorter position, which required scanning and sorting small packages, was awarded based on seniority and Darrington was next on the list to receive it. Approximately two months after his injury, Darrington moved from a preload to a small sort position. Darrington worked in a small sort position without needing assistance. He also continued to work occasionally as a cover driver.

During the week of March 19, 2012, Darrington was scheduled to work in his regular small sort position. However, on March 19, Darrington did not report for his small sort shift and did not notify his supervisor of his absence, resulting in a "no call/no

3

show." On March 20, Darrington again did not show up for his small sort duties, resulting in a second "no call/no show." This time, Darrington sent his small sort supervisor, Gerald Flores, a text message, stating: "This is [Darrington]. I drove yesterday and today the same. I will be in tomorrow and the rest of the week for small sort." When reviewing timecards, Flores noticed that Darrington did not have any time entries for March 19 and 20. Accordingly, Flores contacted driver manager Frank Lococco to inquire as to whether Darrington had driven either day. Lococco replied that Darrington had not driven on either day and had not been scheduled as a cover driver on any day that week. Darrington did not report to work the rest of the week.

In accordance with the terms of a collective bargaining agreement, Flores issued Darrington a 72-hour notice to return to work by March 27, 2012, or he would be terminated. Darrington returned to work on March 26. However, based on Darrington's text message, timecards, and information from the driver manager, Flores requested that Jim Kenny, who had become a security manager, investigate the matter as a potential case of dishonesty.

As part of his investigation, Kenny interviewed Darrington. According to Kenny, Darrington admitted to not working the entire week as a small sorter, despite his text message stating he would return to his small sort duties during the latter part of the week. Darrington advised Kenny that although he had not been scheduled as a cover driver, the driver manager had asked him to drive last minute and placed him on "stand by," but he was not ultimately used as a driver.

4

According to Darrington, he reported to work as a cover driver every day during the week of March 19, 2012. He stated that on March 19 and 20, he showed up to drive, but no routes were available for him. Instead, driver manager Chuck Hanks sent him home and asked him to deliver packages in his personal vehicle on the way. Darrington did not report to small sort because Hanks stated he needed Darrington to drive the whole week.

In order to verify Darrington's version of events, Kenny interviewed Lococco, reviewed the cover driver schedule and Darrington's timecards, and received a statement from the small sort supervisor. Lococco stated he had not spoken to Darrington about cover driving on March 19 or 20, and Darrington was not scheduled those days. The small sort supervisor informed Kenny that he had not been contacted by anyone within UPS intending to use Darrington as a cover driver on an unscheduled basis. On March 28, 2012, UPS terminated Darrington's employment for dishonesty. When Kenny escorted Darrington out of the UPS premises, Darrington stopped to use the restroom because he felt sick and had to throw up. Kenny told Darrington to hurry up, shook his head, and said, "it's always something with you people."

Darrington filed a grievance report with his union. Darrington and the union did not dispute the merits of Darrington's termination, stating there were no excuses for his behavior. Instead, Darrington and the union asked for Darrington to get a second chance. In April 2012, a labor panel heard Darrington's grievance and upheld his termination for proven dishonesty.

5

In January 2013, Darrington filed a complaint against UPS for violation of Labor Code section 1102.5, wrongful termination in violation of public policy, disability discrimination, failure to accommodate his disability, racial discrimination, retaliation, and hostile work environment harassment. UPS moved for summary judgment and alternatively summary adjudication of the issues. UPS argued Darrington could not state a prima facie case of discrimination on any of his stated grounds because he was not disabled, did not require an accommodation, and could not identify racially-motivated conduct on the part of UPS. UPS also maintained that it terminated Darrington's employment for a legitimate business reason, namely his dishonesty. According to UPS, the absence of a causal connection between Darrington's alleged disability and his termination, combined with the fact of the legitimate nondiscriminatory termination decision, defeated Darrington's disability discrimination claim. UPS also argued Darrington's failure to accommodate claim failed because it provided him every requested accommodation. UPS further contended Darrington's racial discrimination lacked merit because it employed Darrington for eight years and continued to employ other African-American workers, and Darrington's claim was based solely on an ambiguous comment that did not implicate race. On Darrington's retaliation claim, UPS argued he did not engage in protected activity and there was no causal connection between his injury in July 2011 and his termination eight months later. Lastly, UPS argued Darrington's wrongful termination claim failed because it was derivative of his other claims.

After hearing arguments on the matter, the trial court granted UPS summary judgment. The court found Darrington had not established a prima facie case of disability discrimination because he was not disabled at the time he was terminated and, even assuming he was, he did not present evidence that would permit a reasonable trier of fact to conclude UPS intentionally discriminated against him based on his alleged disability. Further, UPS had a legitimate nondiscriminatory reason for terminating Darrington and he did not demonstrate that reason was merely a pretext. The court concluded Darrington's failure to accommodate claim failed because he never requested an accommodation. In regard to Darrington's racial discrimination claim, the court found he did not identify racially-motivated conduct on the part of UPS. On the retaliation claim, the court determined that Darrington failed to demonstrate that he engaged in protected activity and that his termination was connected to any protected activity. The court concluded Darrington's wrongful termination claim also failed because it was premised on his other nonmeritorious causes of action.

## DISCUSSION

### I. *Appellate Record*

As part of the appellate record, UPS and Darrington submitted a joint notice of lodgment of exhibits, which included the exhibits the parties had submitted to the trial court. UPS argues Darrington added several pages to the joint notice of lodgment that were not included in support of his opposition to UPS's summary judgment motion in the trial court. Darrington does not dispute this assertion.

7

Based on our review of the appellate record, there are five pages within an exhibit containing excerpts from Kenny's deposition that are not consecutively numbered in the joint notice of lodgment. On appeal, Darrington relies on testimony contained within those pages, but does not provide accurate record citations. Instead, Darrington cites to the pages surrounding the nonnumerated pages. Given that Darrington does not dispute UPS's argument, he provides inaccurate record citations, and there is no indication that the nonnumerated pages were before the trial court, we disregard that evidence as beyond the scope of appellate review. (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632; *Reserve Ins. Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) Having said that, we are also compelled to note that in many instances throughout his brief, Darrington does not provide accurate record citations. It is not our burden to comb through the record for support for Darrington's arguments. (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738.)

## II. *Employment Discrimination Claims*

A. *Standard of Review and Summary Judgment Burdens on Cause of Action for Employment Discrimination*

California's Fair Employment and Housing Act (the FEHA) prohibits an employer from terminating or otherwise discriminating against any employee on enumerated grounds, including race or physical disability. (Gov. Code, § 12940, subd. (a).) "Disparate treatment," the form of discrimination at issue here, "is intentional discrimination against one or more persons on prohibited grounds." (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 354, fn. 20 (*Guz*).) Because direct evidence of

8

discriminatory motive is ordinarily unavailable, California courts have adopted a "three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . based on a theory of disparate treatment."  (*Id*. at p. 354, citing *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792.)  Under the *McDonnell Douglas* test, (1) the plaintiff/employee must set forth sufficient evidence to establish a prima facie case of discrimination; (2) the defendant/employer must then articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) the employee then has the opportunity to show the employer's articulated reason is pretextual.  (*Guz*, *supra*, at pp. 354-356.)

Notwithstanding the *McDonnell Douglas* test, "like all other defendants, the employer who seeks to resolve the matter by summary judgment must bear the initial burden of showing the action has no merit."  (*Le Bourgeois v. Fireplace Manufacturers, Inc*. (1998) 68 Cal.App.4th 1049, 1058; *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1156.)  A defendant satisfies this burden by showing one or more of plaintiff's prima facie elements is lacking, that the adverse employment action was based on legitimate, nondiscriminatory factors, or that there is a complete defense to the cause of action.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203, citing *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 255, fn. 8.)  " 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' "  (*Aguilar*, *supra*, at p. 849.)

9

On appeal from a summary judgment, "[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) The evidence must be viewed in favor of the plaintiff as the losing party, construing the submissions of the plaintiff liberally and those of the defendant strictly. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

B. *Darrington Failed to Rebut UPS's Evidence of a Legitimate Nondiscriminatory Reason for His Discharge*

In seeking summary judgment, UPS sought to demonstrate the existence of a legitimate, nondiscriminatory reason for Darrington's termination, namely that he was dishonest regarding his absences from work. UPS presented evidence that pursuant to its "Honesty in Employment" policy and collective bargaining agreement with Darrington's union, dishonesty was grounds for immediate termination. UPS presented evidence that it investigated Darrington's claim that on March 19 and 20, 2012, he was working as a cover driver. A driver manager stated that he had not spoken to Darrington about cover driving on March 19 or 20, and Darrington was not scheduled to drive either day. The cover driver schedule for the week in question did not identify Darrington as a cover driver. Further, Darrington's time card for that week did not include any time entries. Lastly, Darrington's small sort supervisor had not been contacted by anyone within UPS about using Darrington as a cover driver on an unscheduled basis. Based on its investigation, UPS terminated Darrington's employment for dishonesty in violation of UPS's Honesty in Employment Policy.

10

This evidence satisfied UPS's initial burden of showing a legitimate, nondiscriminatory reason for terminating Darrington's employment, that is, a reason that is facially unrelated to prohibited bias. (Code Civ. Proc., § 437c, subd. (p)(2); *Guz*, *supra*, 24 Cal.4th at pp. 354-355, 358; *Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1732-1733.) Thus, the burden shifted to Darrington to " 'produce "substantial responsive evidence" that [UPS's] showing was untrue or pretextual.' " (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 807 (*Horn*).) " 'To avoid summary judgment, [plaintiff] "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." [Citation.] . . . [Citation.]' . . . [A]n issue of fact can only be created by a conflict of evidence. It is not created by speculation or conjecture." (*Ibid.*) Nor is it sufficient to show the employer's decision was wrong or mistaken, since the factual dispute at issue is whether the discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1005 (*Hersant*).) Rather the employee must produce evidence of " 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," [citation], and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons." ' " (*Ibid.*)

As evidence of pretext, Darrington contradicts UPS's grounds for termination. He points to his testimony that a driver manager asked him to work as a cover driver during the week of March 19, 2012. He further relies on his testimony that he did not clock in

11

on his timecard because he was not assigned a cover driver shift and instead the driver manager had asked him to deliver packages in his personal vehicle. Darrington suggests that his supervisor approved of cashing out a vacation week for Darrington in order to compensate him for his week as a cover driver. We note that this assertion is not supported by the evidence. While Darrington may have cashed out a vacation week, there is no evidence that the payment was to compensate Darrington for cover driving off the clock.

Regardless, whether or not Darrington actually worked as a cover driver during the week of March 19, 2012, is immaterial. "It is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 436 (*King*).) Moreover, Darrington's "uncorroborated and self-serving" testimony does not create a genuine issue of material fact. (*Id.* at p. 433.) Darrington must show a causal link between his race or alleged disability and his termination. (*Id.* at p. 434.) He has not done so.

Darrington asks us to infer a discriminatory motive based on what he calls UPS's "sham" investigation. He asserts that the investigation was improper because it was conducted by Kenny, who had previously denied him access to medical care and threatened termination if Darrington pursued treatment, and Kenny did not interview Hanks, the supervisor who had approved of Darrington's vacation week in March 2012. It is unreasonable to infer that Kenny's participation in the investigation shows a discriminatory motive because it is undisputed that it was not Kenny who initiated the

12

investigation; rather, he conducted the investigation based on a request from Darrington's small sort supervisor. The small sort supervisor initiated the investigation after receiving Darrington's text message, reviewing his time cards, and speaking with the driver manager. Further, Kenny became UPS's security manager in November 2011, and, in that role, was responsible for investigating incidents of potential dishonesty. The fact that Kenny did not interview the supervisor who had approved a vacation week for Darrington also does not suggest discrimination as Kenny interviewed Darrington, Darrington's small sort supervisor, and driver manager Lococco, and reviewed relevant documents, such as the cover driver schedule and Darrington's timecards. Darrington's proffered evidence falls short of raising a reasonable inference that Kenny performed the investigation based on Darrington's race or workplace injury, which had occurred eight months earlier.

Darrington also asserts the investigation was a pretext because Kenny did not consider whether Darrington was granted paid time off and admitted that such information would have been relevant to his investigation; Kenny admitted that it was possible Darrington showed up to cover drive, but was sent home; Kenny admitted there was incentive for the driver manager to lie about Darrington; Kenny had not investigated the driver manager's prior UPS policy violation of asking Darrington to cover drive without seniority; and Kenny was unaware that Darrington was a valued cover driver due to his knowledge of the routes. In making these assertions, Darrington either relies on portions of Kenny's deposition testimony that were not submitted to the trial court or provides this Court with inaccurate record citations. As we previously stated, we do not

13

have a duty to search the record for Darrington and will disregard evidence not presented in the trial court (*ante*, pt. I).

Having reviewed Darrington's evidence and arguments, we conclude that a trier of fact could not reasonably conclude that UPS's stated reasons for terminating Darrington "were implausible, or inconsistent or baseless." (*Hersant*, *supra*, 57 Cal.App.4th at p. 1009.) We therefore hold that Darrington has not met his burden of producing substantial evidence that UPS's reason for terminating him were pretextual and used merely to veil an unlawful act of discrimination. (*Ibid.*)

C. *Darrington Failed to Raise a Triable Issue of Fact as to Whether He Has a Disability*

Even if Darrington had shown UPS's reason for terminating him was a pretext, his disability discrimination claim fails because he failed to raise a triable issue of fact as to whether he suffered from a disability for purposes of the FEHA.

" 'A prima facie case for discrimination "on grounds of physical disability under the FEHA requires plaintiff to show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and, (3) he was subjected to adverse employment action because of his disability." ' " (*Arteaga v. Brink's, Inc*. (2008) 163 Cal.App.4th 327, 344-345 (*Arteaga*).)

"Under the FEHA, 'physical disability' includes having a physiological disease, disorder, or condition that, by affecting the neurological or musculoskeletal body systems, special sense organs or skin, 'limits' a 'major life activity.' [Citation.] 'Limits' is synonymous with making the achievement of a major life activity 'difficult.' [Citation.] 'Major life activity' is construed broadly and includes physical, mental, and social

14

activities, and working. [Citation.] ' "[W]orking" is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments.' [Citation.] Whether a major life activity is limited 'shall be determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity.' " (*Arteaga*, *supra*, 163 Cal.App.4th at p. 345.) " 'In deciding whether [the employees'] limitations . . . make them "disabled" under FEHA, the proper comparative baseline is either the individual without the impairment in question or the average *unimpaired* person.' " (*Ibid*.)

Darrington's alleged disability was based on the back and wrist injury he suffered in July 2011. He argues the injury made major life activities of walking, bending, lifting, grabbing, and performing manual tasks more difficult. However, the evidence that he points to either does not support his claim or was limited to the time immediately following his injury.

Darrington did not present evidence that his pain and limitations were anything more than temporary. Further, he acknowledged that the doctor who examined him after his injury immediately released him for work without limitations and he did not need any assistance after he moved to a small sort position approximately two months after his injury. This evidence belies Darrington's claim that he continued to suffer from a physical disability. Even if Darrington continued to suffer some pain, that "alone does not always constitute or establish a disability. [Citations.] An assessment must be made to determine how, if at all, the pain affects the specific employee." (*Arteaga*, *supra,* 163

15

Cal.App.4th at p. 348.)  In this case, Darrington did not show that his pain and limitations persisted beyond his injury such that he had a disability within the meaning of FEHA.

To support his disability claim, Darrington also relies in part on a neurosurgical consultation report from a neurologist who examined him more than one year after his injury in connection with workers' compensation proceedings.  The neurologist diagnosed Darrington as having "lumbar strain/sprain with radiculitis."  UPS objected to the use of this document in the trial court on grounds that it was not properly authenticated, it constituted hearsay, and was irrelevant.  The trial court sustained UPS's objections, but did not specify which of the asserted bases it relied upon.

On appeal, Darrington argues only that the trial court should not have found the neurosurgical consultation report was hearsay and does not address UPS's other grounds for objecting to the report.  We review the trial court's evidentiary rulings for abuse of discretion.  (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82-83.)  Darrington does not explain how the court abused its discretion in regard to each basis for UPS's objection or how he was prejudiced as a result.  "One cannot simply say the court erred, and leave it up to the appellate court to figure out why."  (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368; *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1338 (*Habitat*) [where the trial court does not state the grounds for sustaining objections, it is presumed that they were sustained on all grounds stated].)  "This court is not inclined to act as counsel for [Darrington] or any appellant and furnish a legal argument as to how the trial court's rulings in this regard constituted an abuse of discretion."  (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1164.)  Where,

16

as here, there are independent, unchallenged grounds for the trial court's order, we conclude the trial court properly sustained UPS's objections on these grounds. (*Habitat*, at pp. 1338-1339.)

D. *Darrington Failed to Raise a Triable Issue of Fact as to Race Discrimination*

Like his disability discrimination claim, even if Darrington had made a showing of pretext, his racial discrimination claim still fails. A prima facie case of race discrimination generally means the plaintiff must provide evidence that (1) the plaintiff was a member of a protected class, (2) the plaintiff was qualified for the position he or she sought or was performing competently in the position held, (3) the plaintiff suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. (*Guz, supra*, 24 Cal.4th at p. 355.) There is no dispute that as an African-American, Darrington was a member of a protected class. Our focus here is on the fourth element, that is, whether there is admissible evidence to raise a triable issue of fact suggesting UPS harbored a discriminatory animus toward African-Americans.

Darrington argues Kenny's remark of "there's always something with you people," combined with Kenny's comments to dissuade Darrington from seeking medical treatment and the "sham" investigation, show racial animus. There is nothing in Kenny's comments or the investigation implicating race. While Kenny referenced "you people," there is nothing in the record from which a reasonable trier of fact could infer racial animus from that ambiguous comment. Instead, the undisputed evidence established that UPS employed Darrington, an African-American, for eight years. According to

17

Darrington, UPS also employed a significant number of other African-Americans.  Prior to his termination, Darrington had never heard Kenny make a racist remark.  Darrington's subjective belief alone is not sufficient to create a genuine issue of fact.  (*King*, *supra*, 152 Cal.App.4th at p. 433.)

### III.  *Failure to Accommodate Claim*

The FEHA makes it unlawful for an employer to fail to reasonably accommodate an employee's known physical or mental disability, unless the accommodation would produce a demonstrable undue hardship.  (Gov. Code, §12940, subd. (m).)  " 'The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.' "  (*Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 971.)

" '[T]he interactive process of fashioning an appropriate accommodation lies primarily with the employee.'  [Citation.]  . . .  ' "[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it.  Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge." ' "  (*King*, *supra*, 152 Cal.App.4th at p. 443.)

As we explained, Darrington failed to raise a triable issue of fact as to whether he has a disability within the meaning of the FEHA.  (*Ante*, pt. II.C.)  Even if he had made that showing, he failed to raise a triable issue of a fact as to whether UPS failed to accommodate his alleged disability.  It is undisputed that Darrington worked in a small

18

sort position without needing assistance. Darrington does not argue that UPS failed to provide him with a *requested* accommodation. Rather, relying on *Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th 757 (*Cuiellette*), he contends UPS is liable for failure to accommodate because it *withdrew* his accommodation of working as a small sorter based on pretext.

In *Cuiellette*, the Los Angeles Police Department (LAPD) appealed from a judgment in favor of a disabled police officer on his FEHA claims. (*Cuiellette*, *supra*, 194 Cal.App.4th at p. 760.) The LAPD had placed the officer in a court desk position based on a doctor's note limiting the officer to administrative work. (*Id.* at p. 761.) The LAPD later informed the officer that it could not allow him to work because he was 100 percent disabled pursuant to a workers' compensation proceeding. (*Id.* at p. 762.) The LAPD argued that the trial court had erred in finding liability because the officer was unable to show he could perform *all* duties, not only desk duties, of a police officer without a reasonable accommodation. (*Id.* at p. 768.) The court held that because the officer was qualified to perform the duties of the court desk position and placed there based on LAPD's accommodation policy, his removal from that position violated the accommodation provisions of subdivision (m) of Government Code section 12940. (*Id.* at p. 772.)

*Cuillette* is inapplicable in this case because Darrington did not show and UPS did not contend that it terminated him based on his inability to perform his job duties. Rather, UPS terminated him based on dishonesty in violation of UPS's policy. As we previously explained, Darrington failed to rebut UPS's showing of a legitimate,

19

nondiscriminatory reason for his termination with evidence raising an inference of intentional discrimination. Nothing in *Cuillette* suggests that an employer cannot terminate a disabled employee for a legitimate, nondiscriminatory reason. As the *King* court aptly noted, "a disabled employee has no greater prerogative to compromise integrity than any other employee." (*King*, *supra,* 152 Cal.App.4th at p. 436.)

In sum, Darrington failed to raise a triable issue of fact on his failure to accommodate cause of action.

## IV. *Retaliation Claim*

To make a prima facie case of retaliation, the plaintiff must establish "(1) he or she engaged in a protected activity; (2) the employer subjected the employee to an adverse employment action; and (3) a causal link between the protected activity and the employer's action." (*Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1457.)

Darrington argues his protected activity was seeking and enforcing his right to an accommodation. However, "a mere request—or even repeated requests—for an accommodation, without more, [does not] constitute[] a protected activity sufficient to support a claim for retaliation in violation of FEHA. On the contrary, case law and FEHA's implementing regulations are uniformly premised on the principle that the nature of activities protected by [Government Code] section 12940, subdivision (h) demonstrate some degree of opposition to or protest of the employer's conduct or practices based on the employee's reasonable belief that the employer's action or practice is unlawful." (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 651.) Similarly, initiating the interactive process and exercise of the right to receive an

20

accommodation does not constitute a protected activity.  (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 381.)

We recognize that in 2015, the California Legislature passed Assembly Bill No. 987, which provides protection against retaliation when an individual requests an accommodation under the FEHA.  (Assem. Bill No. 987 (2015-2016 Reg. Sess.) § 2.) However, the amendment took effect on January 1, 2016, and applies only prospectively. (*Ibid.*; see *McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475-477 [concluding amendment to the FEHA regarding individual liability for harassment applied only prospectively].)

Based on the foregoing, the trial court correctly granted summary judgment on Darrington's retaliation claim.

## V.  *Wrongful Termination Claim*

Darrington concedes that his wrongful termination claim is based on his disability discrimination, failure to accommodate, retaliation, and racial discrimination claims.  We found no triable issues of fact on those underlying causes of action.  Thus, Darrington's wrongful termination claim fails for the same reasons.

DISPOSITION

The judgment is affirmed.  United Parcel Service is entitled to costs on appeal.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.