Filed 3/17/21  In re S.A. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re S.A., a Person Coming Under the Juvenile Court Law. | C091787 |
| SUTTER COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT, | (Super. Ct. No. DPSQ190000023) |
| Plaintiff and Respondent, | |
| v. | |
| J.A. et al., | |
| Defendants and Appellants. | |

J.A. (father) and W.M. (mother), parents of the minor, appeal from the juvenile court's order terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Without challenging the sufficiency of the evidence to support the court's order, the parents assert the court erred in holding the section 366.26

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

hearing at all, failed to meet minimum standards for remote appearances, and precluded the parents from effectively participating.  Finding no error, we will affirm the juvenile court's order.

## BACKGROUND

In light of the parents' narrow claim, we need not provide a detailed recitation of the facts or procedural history in the dependency proceedings.  Specific facts will be provided where relevant to the discussion.

### *Butte County Proceedings*

The family came to the attention of the Butte County Department of Employment and Social Services in February 2018 after reports that the two-year-old minor, S.A., was suffering emotional abuse and neglect as a result of the parents' domestic violence.  The minor was dirty and unbathed, and appeared to have speech and developmental delays.  The family home was "filthy" with trash and dirty diapers on the floor, baby bottles with rotting milk inside, and minimal food.  It also became clear that mother might have untreated mental health issues.  Mother told the social worker there was ongoing domestic violence and that father hit the minor when he was angry and isolated mother from her family.  Father admitted to ongoing domestic violence but claimed it was mother who was the aggressor.  Father was arrested on domestic violence charges.  Thereafter, mother was arrested for being under the influence of methamphetamine.

On February 13, 2018, the Butte County Department of Employment and Social Services filed a dependency petition on behalf of the minor pursuant to section 300, subdivisions (b) and (g).  The following day, the Butte County juvenile court ordered the minor detained.  Following a contested jurisdiction hearing on May 3, 2018, the court sustained the allegations in the petition and adjudged the minor a dependent of the juvenile court.

The six-month review hearing was continued several times.  On February 14, 2019, the court found reasonable services were not provided to the parents during their

2

period of homelessness following their move to Sutter County. On March 1, 2019, the court ordered transfer of the case to Sutter County.

***Sutter County Proceedings***

The Sutter County court conducted a transfer-in hearing and, on March 26, 2019, accepted transfer of the case from Butte County. The Sutter County Department of Health and Human Services (Department) prepared a transfer-in report and a new case plan.

At the continued 18-month review hearing on October 29, 2019, the court terminated services and set the matter for a section 366.26 hearing for February 20, 2020.

The parents filed petitions for writ relief on December 24, 2019. This court denied those petitions on February 14, 2020.

The Department's section 366.26 report and subsequent addendum report both recommended termination of parental rights with a permanent plan of adoption and no further visits due to the stress and trauma experienced by the minor after visits with the parents.

The section 366.26 hearing was continued several times and eventually commenced on March 24, 2020. Both parents appeared by telephone pursuant to their request. The Department made an ex parte request to continue the matter that the court denied, noting the section 366.26 hearing was considered a "critical function" despite COVID-19 restrictions. The court also denied the parents' section 388 petitions. As for the section 366.26 hearing, the court terminated parental rights with a finding that adoption was the appropriate permanent plan and denied the parents' requests for a final visit with the minor.

## DISCUSSION

Father contends the court erred in holding the section 366.26 hearing because the minimum standards for remote court appearances were not met and thus his due process rights to a fair hearing were violated because he was unable to effectively participate in

3

the hearing.  Mother contends that a reversal of the court's order terminating parental rights as to father requires a reversal as to her as well.  As we will explain, father's claim lacks merit and we therefore need not address mother's claim.

As the Department argues, the parents requested to appear by telephone and did not object to their telephonic appearance at any time during the section 366.26 hearing.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)  "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."  (*Ibid.*)  Had the parents or their respective counsel objected to commencement of the hearing via telephone, the court could have immediately addressed their concerns and determined whether any action was necessary.  They did not.  Instead, they confirmed it was their request to participate telephonically, as the court expressly found without objection.  Further, when the court denied the Department's ex parte request to continue the matter and asked if anyone wished to be heard, neither the parents nor their counsel objected or commented further.  As a result, they forfeited their ability to raise the claim on appeal.

In any event, even if the claim was not forfeited, we are not persuaded that the juvenile court erred.  " '[S]tate intervention to terminate the relationship between [a parent] and [the] child must be accomplished by procedures meeting the requisites of the Due Process Clause.' [Citations.]"  (*Santosky v. Kramer* (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 606], quoting *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 24-32, 37 [68 L.Ed.2d 640, 647-652, 656]; see *In re Z.K.* (2011) 201 Cal.App.4th 51, 64-65 ["*Santosky* establishes minimal due process requirements in the context of state dependency proceedings"].)  Father contends there were difficulties in communication throughout the proceeding and those difficulties were so significant they prevented both parents from hearing the entire proceeding or "fairly litigat[ing]" the beneficial relationship exception to adoption.  The record belies father's claim.

At the start of the section 366.26 hearing, counsel for the parents, the minor, and the Department made their appearances in the courtroom and the parents made theirs from their telephones at home. The court confirmed that the parents were in the same room but on different phones with their respective attorneys. The court noted both parents were coming through the phone of father's attorney but not through that of mother's attorney. Father placed the court on speaker so both he and mother could hear. At that point, both parents confirmed they could hear the court and both confirmed they understood that the court would hear the parents through father's attorney's phone, that a court reporter was taking down testimony, and that both parents would have an opportunity to speak at some point during the hearing. They also confirmed that they were not feeling well and that they wished to appear by telephone.

The court denied the Department's request for a continuance and asked if anyone wished to be heard. Parents' counsel declined or submitted. The court disposed of the parents' section 388 petitions and then asked counsel to state their respective clients' positions regarding the Department's recommendation to terminate parental rights. Counsel for the Department began but was interrupted by the court who sought to confirm that the parents could hear counsel speaking. Father said, "No." The court directed counsel to speak into the microphone. Counsel requested that the court follow the recommendation to terminate parental rights, stated there was clear and convincing evidence that the minor was adoptable, and argued none of the exceptions to adoption applied. When the court asked father if he could hear counsel speaking, father responded, "Not really but I disagree with him." The court replied, "So you did hear enough to know that he is asking the Court to follow the recommendation and he does not -- well, actually, [counsel], I'm going to have the phone handed to you and I want you to speak into the phone." Counsel for the Department restated the Department's position almost verbatim. Father confirmed he heard counsel but stated he could no longer hear the court. When the court asked mother whether she heard counsel's comments, mother

5

responded, "I understand. The father is indicating or letting me know what's happened." The court asked why father needed to communicate to mother if they were both on speakerphone. Mother told the court, "I'm hard of hearing" and "I hear things underwater. So I can hear. I hear everything underwater." When the court noted it was trying to make sure mother heard and asked whether she would have the same hearing issues if she were present in court, mother replied, "Yes."

Next, the court handed the phone to mother's attorney for his comments and stated that if counsel or mother wished to present any evidence, "we're going to do that. We're kind of passing the phone around because I want to make sure that you hear everybody." Mother responded, "Yes." Mother's counsel argued against termination of parental rights, objected to the adoption assessment, and argued there was a beneficial parental relationship between mother and the minor and a sibling relationship, and that termination of parental rights and termination of the sibling relationship would be detrimental to the minor. The court then passed the phone to father's counsel who made a similar argument and further disagreed with the Department's assessment that the parents had not made sufficient progress in services. At that point, the court confirmed that father could hear and that mother understood.

The court turned next to the proper standard of proof regarding the likelihood of adoption and noted it was the parents' burden to prove the applicability of an exception, confirming that all parties were in agreement. The court then passed the phone to counsel for the Department who argued the parents had not met their burden as to the applicability of any exception to adoption and that there was sufficient evidence to support the adoptability report. Counsel for the parents submitted on the issue but argued the parents had a right to make a statement.

The court informed father it was "your time to make a statement" and instructed him to speak slowly for the benefit of the court reporter. Father began to explain what he had done prior to and since transfer of the case from Butte County, his participation in

6

visitation and court hearings, and why he felt termination of parental rights would be detrimental to the minor. The court reporter interrupted and asked for clarification, and the court asked father to repeat the last portion of his statement. Father explained he had a bond with the minor, and that the minor told him she wanted to come home. Father was in the middle of answering a question posed by the court when the reporter interrupted a second time requesting clarification, resulting in the following colloquy:

[THE COURT: You're kind of cutting out. Are you holding the phone in the same way, because sometimes we get you very clearly, other times you cut out.

"[FATHER]: Yeah, I get the same thing.

"THE COURT: Do you have a hard phone that we can call you on or do you only have a cell phone?

"[FATHER]: Only the cell phone. Sorry.

"THE COURT: Okay. Let's try it again. If need be, we might want to try calling [mother's] phone but go ahead."

Father continued to explain his efforts in services. The reporter interrupted twice for clarification and the court asked father to clarify or repeat himself. Father did so, completed his statement, and informed the court that mother wished to speak.

Mother said "hello" and the court instructed her to begin but then stated, "Hold on for one second. Will you guys give me your phone number, please. [¶] . . . [¶ I'm going to hang up right now and call you back on a different phone." The court called the parents back and mother answered. The court noted it was calling from the court phone and could "hear you very clearly now." Mother proceeded to discuss her participation in counseling and talk about the evidence she provided to her attorney in addition to that which was attached to the section 388 petition. The court explained that it read and considered the petition and the attachments and denied the petition for lack of a prima facie showing of changed circumstances or that the requested change was in the minor's best interest. When asked if she had any other comments, mother stated she was not told

7

what to file with the petition and she was unable to submit everything she wanted to submit. The court invited mother to present any information she wished to present and stated the court would consider it. Mother stated she did not want her parental rights terminated and felt it would be harmful to the minor not to reunite with her parents.

Next, the court noted the "connection is so much better" and offered father another opportunity to speak and "say everything that you wanted to say." Father reiterated his previous statements about his participation in services. When the Department and minor's counsel objected for lack of relevance, the court noted the objection but allowed father to proceed, explaining to father as follows: "What you're saying isn't relevant to this proceeding because the Court is making a determination of whether or not the child is likely to be adopted; and then if there is an exception to the adoption rule, you would present evidence. But what I've indicated to them I've overruled the objection. Go ahead and make your comments." Father proceeded to discuss his efforts to participate in the case plans in Butte and Sutter Counties and complained that the Department never told him exactly what he was required to do.

When father finished, the court asked the parents if they could both hear the court. Mother responded affirmatively. The court then asked if the parents could hear the attorneys. When father responded, "I'm not sure if I can hear them," the court stated, "So we're going to start and we're going to start by going down the room. I want to hear comments at this point. The Court has taken the information in." The court began with counsel for the Department. Before moving on to minor's counsel, both parents confirmed they could hear the attorneys speaking. Minor's counsel requested the court follow the recommendation to terminate parental rights and argued the parents did not meet their burden to show that an exception to adoption applied. Counsel for each parent submitted on their earlier arguments and noted their client's objections to termination of parental rights.

In making its findings and orders, the court found it issued the order authorizing the parents to appear via telephone at the request of the parents, noting "that was accommodated and actually that second phone call we can hear crystal clear at this point." The court found the minor was likely to be adopted and terminated parental rights.

Contrary to father's characterization of events, the record makes plain that, at every turn, the court undertook significant efforts to determine if the parents could hear and, if not, to resolve the problem and ensure their full participation in the hearing. When the reporter interrupted and asked for clarification, an occurrence not at all uncommon during any given hearing on any given day, the court stopped and asked that whoever was speaking repeat their previous statements. When the phone connection became choppy or cut out, the court generated a new call on a different telephone with a clearer connection. Father was able to give a full statement, yet the court offered him a second opportunity to speak again on a clearer connection, which father accepted. The court also considered statements from father that were otherwise irrelevant to the issues at hand in order to allow father (and mother) to be fully heard. At every opportunity, the court checked in with the parents to confirm that they could hear or, in mother's case, that she understood what was happening through father. Mother confirmed her auditory issues caused no greater problems over the telephone than if she had been present in the courtroom.

Further, counsel for each of the parents argued the beneficial parental relationship exception applied. In that vein, father's statement included his claim that he had a bond with the minor and both parents stated the minor would suffer detriment if parental rights were terminated.

Father asserts the court should have continued the matter to another time to allow for technological developments to better accommodate telephonic appearances. He speculates, without any evidence, that the court simply wanted to "clear its crowded

calendar and expedite" the section 366.26 hearing. But father neither requested a continuance nor did he object when the court denied the Department's request for a continuance. As for why the court denied the request for continuance, the court stated it was under a shelter-in-place order issued by the Governor and was "doing must-hear matters in court." The court added, "We are here for the [section 366].26 hearing. Pursuant to judicial order issued by myself on March 20th of 2020 we are at critical functions for the Court. This is a critical function." The court noted its March 20, 2020 order detailed the social distancing requirements and asked if anyone objected to that order. Neither the parents nor their counsel objected.

Father argues the court failed to ensure the parents were able to communicate confidentially with their respective attorneys during the hearing pursuant to California Rules of Court, rule 5.531(b), which provides in relevant part that the juvenile court must implement procedures or protocols to "[e]nsure that the party appearing by telephone is able to communicate confidentially with his or her attorney (if any) during the proceeding and provide timely notice to all parties of the steps necessary to secure confidential communication." (Cal. Rules of Court, rule 5.531(b)(9) [formerly rule 5.531(b)(8)].) We are not persuaded. As a preliminary matter, we assume the court provided the parents with timely notice of the steps necessary to secure confidential communication with their attorneys. "On appeal, we presume the trial court performed its duties in a regular and correct manner absent a clear showing to the contrary." (*In re Amber D*. (1991) 235 Cal.App.3d 718, 724; see Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) In any event, there is nothing in the record to suggest, nor does father claim, that the parents were prohibited from having confidential communications with their attorneys during the hearing. It is not at all uncommon for parties and/or their attorneys to appear by telephone for a court proceeding. It is also not uncommon during a hearing for an attorney to request a moment to speak with his or her client in confidence. At no point during the section 366.26 hearing did the parents or

10

their respective counsel request to do so. Indeed, the court repeatedly asked the parents whether they understood what was being discussed and twice invited counsel the opportunity to speak confidentially with their clients (the parents). Counsel apparently did not find a need to do so.

Finally, father raises various arguments regarding whether reasonable services were provided. That issue was not relevant to the issues at hand at the section 366.26 hearing and, as noted by the Department, this court denied the parents' petitions for writ relief regarding that issue on February 14, 2020. We therefore need not address father's claims.

We conclude the juvenile court did not err in conducting the section 366.26 hearing.

## DISPOSITION

The juvenile court's orders are affirmed.

/s/
RAYE, P. J.

We concur:

/s/
BLEASE, J.

/s/
HOCH, J.